CASE 89—ACTION FOR DAMAGES FOR BREACH OF CON-
TRACT—FEB 17.

# The Hauser, Brenner & Fath Company v. Tate & Company.

### APPEAL FROM PULASKI CIRCUIT COURT.

1. MEASURE OF DAMAGES—BREACH OF EXECUTORY CONTRACT.—The
measure of damages for breach of an executory contract for
the purchase of manufactured articles made and ready for de-
livery by the seller under the contract is (1) as to the articles
manufactured, the difference between the contract price and the
market price at the place of delivery, and (2) as to articles
contracted for but not manufactured at the time of the breach,
the profits which would have accrued to plaintiffs by the manu-
facture and delivery of the articles, to be ascertained by de-
ducting from the contract price the cost and expense of manu-
facturing and delivering the articles with such further deduc-
tion as might be found reasonable for plaintiffs' time and for
their release from care, trouble, risk and responsibility attend-
ing a full execution of the contract.

2. ASSIGNMENT FOR CREDITORS—DAMAGES—The fact that the plain-
tiffs subsequently to the institution of an action for damages
made an assignment for the benefit of creditors did not operate
to vest a right of action in the assignee, it appearing that the
claim sued on was not included in the deed.

DENTON & COOK FOR THE APPELLANT.

1. Tomlinson necessary party. Daugherty v. Smith, 4 Met., 279;
Banks v. Bosler, 4 Bibb., 573; 1 Chitty Pleadings, 9; Com., &c., v.
Hughes, 8 B. M., 400; Hawkins, &c., v. Com., 3 Mar., 339;
Sander's Heirs v. Jennings, &c., 2 Dana, 37; Singleton v.
Singleton, 8 B. M., 340.

2. Transfer by Tomlinson nothing but parol transfer. Gill v. John-
son's Admr., 1 Met., 649; Perry v. Seitz, 2 Duv., 122.

3. Motion proper proceeding. Civil Code, sec. 118; construed by:
Johnson's Heirs v. Chandler's Heirs, 15 B. M., 589; Vanbuskirk,
&c., v. Levy, 3 Met., 133; Justice v. Phillips, 3 Bush, 200; Wait
v. McClure, 10 Bush, 763.

4. Proof does not support allegations of petition. Dodd v. King, 1 Met., 433; Bowman v. Green, 6 Mon., 339.

5. Under contract appellee should have delivered the staves at Cincinnati before suit. Hawkins v. Ball's Admr., 18 B. M., 816; Escott & Son v. White, &c., 10 Bush, 169; Cleveland v. Moore, 9 B. M., 379; McCall v. Welch, 3 Bibb., 289; Chandler v. Robertson, 9 Dana, 291.

6. True measure of damages difference between contract price and selling price at time of delivery and place of delivery. Miles v. Miller, 12 Bush, 134; Koch v. Godshaw, 12 Bush, 318; Smith v. W. U. Tel. Co., 83 Ky., 104; 5 Am. & Eng. Ency. of Law, 30: Frazier v. Clark, 88 Ky., 260; Barker v. Mann, 5 Bush, 673; Williams, &c., v. Jones, 1 Bush, 621; 6 Dana, 352.

7. Profits never measure of damages. 5 Am. & Eng. Ency. of Law, 32.

8. Parties should have demanded right to ship staves. Chamberlain v. McAllister, 6 Dana, 355; Blackwell v. Foster, 1 Met., 95.

WILL C. CURD, ALSO FOR THE APPELLANT.

1. The assignee of Tate & Company was a necessary party. Cleveland Coal Co. v. Sloan & Dick, 90 Ky., 308; Cantrell v. Hewlett, 2 Bush, 314; Warner v. Turner, 18 B. M., 759; Civil Code, sec. 20; Jones, assignee, v. Johnson, 10 Bush, 651.

2. The damages are excessive.

3. The verdict is not sustained by sufficient evidence and is contrary to the law.

4. It was error to permit plaintiffs to prove the profits they might have made of the staves if they had been permitted to ship them.

5. The evidence shows that the appellees did not at any time after they quit shipping staves to the appellant have the ability or the material on hand with which to carry out and complete their contract.

O. H. WADDLE FOR THE APPELLEES.

The profits which Tate & Company could have realized if they had been permitted to carry out their contract was a proper element of the damage. E. & P. R. R. Co. v. Pottinger & Brother, 10 Bush, 185; Masterson v. Mayor, &c., of Brooklyn,

42 Am. Dec., 38; U. S. v. Speed, &c., 8 Wall., 77; U. S. v. Behan, 110 U. S., 168.

JUDGE BURNAM DELIVERED THE OPINION OF THE COURT.

On October 25, 1892, appellees entered into a written contract with appellant to furnish 150,000 quarter-barrel staves, at thirty-two dollars per thousand, and 150,000 half-barrel staves, at forty-six dollars per thousand, "to be delivered between the date of the contract and the first day of January, 1894, in as nearly equal monthly shipments as possible." 125,000 staves were delivered under this contract, and paid for by appellant. On July 25, 1893, appellant addressed this letter to appellees: "Gentlemen: Your several favors twenty-fifth instant to hand, and noted. We wish to say that we do not want you to ship any staves at all for at least sixty days, as we will be unable to receive them, so you had better save the hauling in and the freight, any way. Of course, we don't hold you to finish contract on time. As we have never pushed you when you were back on contract, we do not want you to push us now when we can not make use of the staves, and it is impossible to make collections. We do not want to give out any paper, and thereby get into a pinch, as we want to be on the safe side." This was the last of a number of letters of the same tenor, beginning in the early part of July, and when the sixty days had expired appellant notified appellee that they would not take any more staves at any price. Thereupon this suit was instituted by appellees to recover damages for breach of contract, alleging that, by the refusal of appellant to comply with the contract, they were damaged in the sum of $11.40 on each thousand staves which it refused to receive.

Appellant in its answer and counterclaim denies that appellees were damaged in the sum of $11.40 on the

thousand staves, and alleges that after the execution of
the contract, relying upon plaintiff's promise to deliver
the staves in as nearly equal monthly shipments as pos-
sible, from the twenty-fifth day of October, 1892, to the
first day of January, 1894, they adjusted their business
to consume monthly 10,575 quarter and 10,575 half-barrel
staves, but that appellees failed to deliver, in the months
of November, December, January, February, and March,
50,575 half and 31,920 quarter-barrel staves, and that by
reason of such failure it was unable to work its factory
to its full capacity, or to meet the demands of its cus-
tomers for barrels during this period, and in consequence
suffered damages in the sum of $2,819; and in amended
answer it alleged that, on account of appellees' failure
to deliver the staves in as nearly equal monthly ship-
ments as possible, between the months of December and
April they were compelled to buy 14 car loads of staves
to make up the deficiency caused by appellees' failure,
which cost it $377.30 more than the contract price made
with appellees; and asked judgment therefor on their
counterclaim. Trial before a jury resulted in a verdict
and judgment for appellees for $1,600, and we are asked
to reverse that judgment on several grounds: First, be-
cause the damages are excessive, and appear to have been
given under the influence of passion and prejudice; second,
because the verdict is not sustained by sufficient evidence,
and is contrary to law; and, third, because the court erred
in allowing plaintiffs to prove the profits they might have
made on the staves if they had been permitted to ship
them.

It appears from the proof that under the contract ap-
pellees realized a net profit of from eleven dollars to
twelve dollars a thousand on the staves actually deliver-

ed, and that they would have realized this amount on all
of them if the contract had been complied with. At all
events, this was a question of fact for the jury, if they
were properly instructed. By the first instruction the
jury were told: "If you shall believe from the evidence
that plaintiffs entered upon the contract between them
and defendant, introduced in evidence, and that they were
ready, able, and willing to fulfill the same, but that de-
fendant, during the existence of the contract, and be-
fore its completion, notified plaintiffs not to continue its
fulfillment, and that they would not receive or pay for
any more staves contracted for, you will find for plaintiffs
in damages. the difference between the market price and
the contract price, at the place of delivery, of any staves
they had manufactured and had on hand at the time of
such notification or refusal of defendant, and the profits,
if any, which would have accrued to them by the manu-
facture and delivery to the defendant of the remaining
staves, up to 300,000, necessary to complete the contract,
such profits to be ascertained by deducting from the con-
tract price the cost and expense of manufacturing and
delivering said staves at the place they were contracted
to be delivered, and such further deduction as you find
to be reasonable for the less time engaged by plaintiffs,
and for their release from the care, trouble, risk, and re-
sponsibility attending a full execution of the contract,—
the whole damage found in no event to exceed $1,998.00."

There was nothing speculative about the profit which ap-
pellees would have realized under their contract; the tes-
timony reduced it to almost a mathematical certainty.
In Thompson v. Jackson, Owsley & Co., 14 B. Mon., 114,
this court said: "On failure to comply with a contract to

[45]

deliver eight hundred hogs, to be slaughtered between specified periods, if the hogs are not delivered according to contract, and the plaintiff show his readiness to slaughter them according to his undertaking, the criterion of damages is the net profit of slaughtering the hogs over the expense and trouble of slaughtering at customary prices." And in E. & P. R. R. Co. v. Pottinger & Bro., 10 Bush, 185, this court said: "Damages which are the natural and proximate consequences of the act complained of may undoubtedly be recovered. Profits which are the direct and immediate fruits of the contract violated are part and parcel of it, and must have been contemplated by the parties when it was entered into, and profits growing out of the execution of the work to be done, as the building of a house, come within this rule."

The general rule is that the measure of damages for breach of an executory contract includes loss of profits which grow out of the contract, and which would have been realized from its full performance, but not the loss of profits or other damages arising out of collateral undertakings entered into on the faith of the contract. It seems to us that the instruction given in this case lays down the true and correct measure for determining the amount appellee was entitled to recover, and the instructions fully and fairly submit the case on appellant's counterclaim.

It is insisted for appellant that as, subsequently to the institution of this suit, Tate & Co. executed a deed of assignment, they can not maintain this action. The deed referred to purports to convey only certain specific articles, and does not include the claim sued on.

A number of other rulings are complained of, but do not appear to have affected the substantial rights of the appellant. It is evident, from the letters of appellant filed in

the record, that they waived any ground of complaint which they might have had for failure of appellees to furnish the proper number of staves during the months of November, December, January, February, March and April, and their subsequent refusal to comply with their contract had no connection whatever with such failure. The judgment is affirmed.