CASE 67—ACTION BY PECK-WILLIAMSON HEATING AND VENTILATING COMPANY AGAINST THE CITY OF LUDLOW FOR BREACH OF CONTRACT. —OCT. 30.

# City of Ludlow v. Peck-Williamson Heating and Ventilating Co.

APPEAL FROM KENTON CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS. REVERSED.

MUNICIPAL CORPORATIONS—CONTRACTS—STATUTORY AUTHORITY—REMOVAL—EFFECT OF CONTRACT—MEASURE OF DAMAGES.

Held: 1. Where a city contracted, as it had authority to do, for a heating plant for a schoolhouse, no subsequent legislation remov-

City of Ludlow v. Peck-Williamson Heating and Ventilating Co.

ing such authority from the city could relieve it from liability on the contract.

2. In an action for breach of contract to purchase a heating plant it was proper to refuse to admit evidence as to whether the heating plant would have operated as it had been warranted to do.

3. Where the seller of a heating plant agreed to furnish repairs for castings for the furnace for a period of ten years in an action by him for damages because of the purchaser's failure to consummate the contract the measure of damages was not merely the difference between the contract price and what it would have cost plaintiff to have put in the plant, but there should have been deducted such sum as would be sufficient to furnish the repairs, such cost being neither vague nor speculative.

FURBER & JACKSON, ATTORNEYS FOR APPELLANT.

We base our right to have this verdict and judgment set aside because:

1. The court erred in fixing the measure of damages.

2. The court erred in refusing to permit the introduction of evidence on the part of appellant as to the costs of making repairs on the furnace.

3. The court erred in refusing to permit the appellant to show that the furnace, if built, could not carry out the terms of the contract.

4. The court erred in refusing to give the instructions offered by appellant.

5. The court erred in the instructions given to the jury.

The appellee claims $1,789.84 damages on a contract that called for an expenditure of $2,665, and say the legitimate profit would have been the difference between $2,665, the contract price, and $875.66, the cost of installing the plant, or, in other words, the appellee company was to make a profit of $200 per cent. on this contract.

If this be true we submit, as a matter of public policy, to prevent, as far as possible, corruption in municipal affairs, courts of justice should not lend their aid to the recovery of such outrageous profits.

We contend that the whole contract should be considered as an entirety, including that part which states: "We guarantee castings and will furnish repairs for the same which may be needed, free of cost, for a period of ten years following."

If the appellant can not show the cost of repairs and that the furnaces are incapable of fulfilling the contract, as matters of defense, then that renders the entire contract uncertain and indefi-

**610**        KENTUCKY REPORTS.      [Vol. 116

City of Ludlow v. Peck-Williamson Heating and Ventilating Co.

nite, and makes any damages that appellee could recover merely a matter of speculation. The damages in this case should not be vindictive, but simply compensatory.

## CASES CITED.

1. *The whole contract must be considered.* Beech on Modern Law of Contracts, sec. 711; Anson on Contracts, 2d Am. ed., 330; Francis v. Shearer, &c., 13 R., 285.

2. *An unconscionable contract.* Rittenhouse v. Mayer, 25 Md., 336.

3. *Repairs and furnaces incapable of carrying out contract.* J. N. Kramer & Son v. Messner & Co., 101 Iowa, 88; Sedgwick on Damages, sec. 90, p. 126; Royalton v. R. & W. Turnpike Co., 14 Vt., 311.

4. *Measure of damages.* Talcott v. Cupper, 52 Mich., 633; Freeman v. Clute, 3 Barb. N. Y., 427; Skinner v. Dayton, 19 Johns. N. Y., 513; Thomas Burgen v. City of New Orleans, 35 La. Ann., 523; Sedgwick on Damages, 8th ed., sec. 170; Adams Express Co. v. Egbert, 36 Pa., 360; Jarrard v. Hill, 14 R., 575; W. T. Adams Machinery Co. v. Looney, 47 S. W., 670; Anson on Contracts, 2d Am. ed., p. 407; Hadley v. Baxendale, 9 Exch., 355; Shouse v. Neiswaanger, 18 Mo. App., 245; Hammer v. Shoenfelder, 47 Wis., 318; Shephard v. Milwaukee, &c., 15 Wis., 318; Ill. Cent. R. R. Co. v. Cobb, 64 Ill., 128; Fleming v. Beck, 48 Pa. St., 312; True v. International Tel. Co., 60 Me., 25; Culling v. Grand Trunk R. R. Co., 13 Allen, 385; Hurd v. Densmore, 63 N. H., 171; Buffalo Barbwire Co. v. Phillips, 64 Wis., 338; H. & T. C. Ry. Co. v. Hill, 63 Tex., 385.

W. H. MACKOY and C. B. MATTHEWS, for appellees.

The object of this action was to recover damages on two specified contracts to install in a schoolhouse which appellant proposed to build a heating and ventilating apparatus and a dry closet apparatus, which appellee was prevented from performing by the act of the appellant, the contract price for the two being $2,665, and which the appellee was at all times willing, ready and able to perform and offered to perform.

As to appellant's defenses, we submit that neither a Constitution, nor a subsequently enacted statute can be so construed as to impair the obligation of a contract that was valid under the law in force at the time the contract was made.

The only question in the case is as to the measure of damages which the appellee sustained by the breach of the contracts by the appellant. The other defenses are mere makeshifts.

Vol. 116]          SEPTEMBER TERM, 1903.          611

City of Ludlow v. Peck-Williamson Heating and Ventilating Co.

The lower court charged the jury as follows: "The measure of damages is the difference between the contract price and what it would have cost to complete the work by plaintiff at the date of the breach of the contract."

That this is the law applicable in such cases would seem to be beyond question.

As against the damages claimed by appellee there can be no set-off for conjectural losses for a period of ten years for repairs to the furnaces; nor did the lower court err in its refusal to permit to go to the jury testimony tending to show what such conjectural losses would have been, nor in refusing to give an instruction with reference thereto.

## CLASSIFICATION OF QUESTIONS DISCUSSED AND AUTHORI-TIES CITED.

1. Statement of facts.

2. The issues in the case.

3. That the appellant had full and complete power and authority under its charter to enter into the contracts for the breach of which it was sued. Original charter of Ludlow, enacted February 9, 1864, sec. 12; amendment to charter of Ludlow, enacted April 19, 1890; Acts of 1889-90, vol. 2, chap. 921, p. 1013; Ky. Stats., sec. 3481.

4. That the measure of damages of the appellee in this case is the difference between the contract price and what it would have cost to complete the work by plaintiff at the date of the breach of the contract. Sedgwick on Damages, 8th ed., vol. 2, secs. 618, 609, 611, 613; Devlin v. Mayor, etc., of N. Y., 63 N. Y., 8, 24, 25; Cook v. Comrs. of Ham. Co., Ohio, 6 McLean, 612; Mason v. Ala. Iron Co., 73 Ala., 270; Hale v. Trout, 35 Cal., 229; Leonard v. Beaudry, 68 Mich., 312; Masterton v. Mayor, 7 Hill (N. Y.), 61; Nilson v. Morse, 52 Wis., 240; Nash v. Hoxie, 59 Wis., 384; Singleton v. Wilson, 85 Tenn., 344, 346; E. & P. Ry. Co. v. Pottinger, 10 Bush, 185; Hill v. Hager, 7 Ky. Law Rep., 518; Tandy v. Hatcher, 9 Ky. Law Rep., 150; Blood v. Herring, 22 Ky. Law Rep., 1725; Bluegrass Cordage Co. v. Luthy & Co., 98 Ky., 583, 590; The Hauser, Brenner & Fath Co. v. Tate & Co., 105 Ky., 701; Goodrich v. Hubbard, 51 Mich., 62, 63; Crescent Mfg. Co. v. Nelson Mfg. Co., 100 Mo., 325; Black River Lumber Co. v. Warner, 93 Mo., 374.

5. Review of testimony upon the question of damages.

6. That when a contract is broken before the time for full performance has expired and the cost of doing the work has fallen meanwhile, plaintiff is entitled to recover what difference there is to his advantage. Goodrich v. Hubbard, 51 Mich., 62, 63.

612                KENTUCKY REPORTS.          [Vol. 116

City of Ludlow v. Peck-Williamson Heating and Ventilating Co.

7. That the brief of counsel for appellant in this case in making charges which are not supported by and can not be inferred from the record in this case is scandalous, and the conduct of appellant's counsel in that regard deserves and should receive the severe censure of this court.

8. Conjectural losses which appellant, a wrong-doer, claims it might have sustained if it had permitted the contracts to be performed, uncertain in their character, which had not accrued either at the commencement or at the trial of this action, and which are not pleaded, can not be set off as against appellee's claim for damages, nor be permitted to reduce the same, and that the rulings of the lower court in excluding evidence in regard thereto were correct. Davis v. Garrett, 6 Bingham, 716; 19 E. C. L., 212; Eng. & Am. Ency. of Law, vol. 8, 2d ed., 610; Keith's Executor v. Hinkston, 9 Bush, 283, 284, 285; Bank of Hopkinsville v. Western Ky. Asylum, 21 Ky. Law Rep., 1821, 1823; Epenbaugh v. Gooch, 15 Ky. Law Rep., 576; Smith v. Phillips, Jr., 16 Ky. Law Rep., 615; Ky. Tobacco Assn. v. Ashby, 9 Ky. Law Rep., 109; Miller v. Burch, 19 Ky. Law Rep., 629, 631.

9. Review of cases cited in brief of appellant's counsel.

OPINION OF THE COURT BY JUDGE BARKER—REVERSING.

The appellee is a corporation organized under the laws of the State of Ohio. In 1890 its corporate name was Bennett & Peck Heating and Ventilating Company—subsequently changed by law—and in that year it entered into a contract with appellant by which it agreed to manufacture and install in a public school building then contemplated being erected by the municipality a system of air furnaces for the purpose of heating it in winter, for which it was to be paid the sum of $2,170. At the same time it made another contract with appellant, by which it agreed to place in the school building a dry-closet apparatus, for which it was to be paid the sum of $495. These contracts were in writing, and are filed as exhibits with the petition. They contain the following guaranty: "We guarantee the castings, and will furnish repairs for the same, which may be needed, free of cost for a period of ten years following." "We guarantee to heat all

Vol. 116]    SEPTEMBER TERM, 1903.    **613**

City of Ludlow v. Peck-Williamson Heating and Ventilating Co.

parts of the building to 70 degrees Fahr., or comfortable occupancy in the coldest winter weather." "We guarantee to change the air in the whole building at least four times per hour, or, in other words, to keep up continuous supplies of fresh air in each room, so that the same shall be replaced once in every fifteen minutes." "We guarantee that there shall be no back-draughts from the dry closets into the school rooms, and that there shall be no connection between the ventilation of the rooms and the ventilation of the dry closets." On March 3, 1893, the appellee addressed the following letter to appellant: "To the Mayor and Board of Council, Ludlow, Ky.—Gentlemen: We have been holding for some time a contract given us by your Honorable Body, for erecting our complete system of warming, ventilation and dry closet in the proposed new school building which your city proposes to erect. We wish to notify you of our readiness at any time to carry out this contract, and hope that the new Board, which we understand has just been elected, can now see their way clear to commence the erection of the building. We will be glad to hear from you in this connection. Very truly yours, George Peck, Pres't." To which the following response was made: "City Clerk's Office, Ludlow, Ky. April 29, 1903. Bennett & Peck; Heating and Ventilating Co., Cincinnati, Ohio—Gentlemen: Your letter of recent date advising us that you are holding contract for the placing of your system of heating and ventilation in the proposed new school house in this city came duly to hand. I am instructed, as city clerk, to inform you that your system will not be adopted nor placed in said schoolhouse when we order. Yours truly, J. C. Richardson, City Clerk." After the receipt of this letter, appellee instituted this action in the Kenton Circuit Court, setting out the contract, and its breach, and praying judgment for damages therefor in the

sum of $1,840. To this appellant filed an answer, setting out a number of defenses, to some of which demurrers were sustained; and finally, under order of court, it filed a reformed answer, in which it denied the incorporation of appellee, or that it had ever been ready or willing to comply with its contract, and alleging that the contract had been mutually abandoned, and had become null and void; that the same had been entered into ·with reference to the issuance of certain bonds of the city, from the proceeds of which funds were to be raised to carry out the contract, and that afterwards the city had been required, by an act of the General Assembly of the Commonwealth of Kentucky, to turn over the entire proceeds of the bonds to the board of education of the city, and that it now had no funds with which to carry out the same; that the entire matter of building and furnishing the school building in question had, since the making of the contract, been placed by law in the hands of the Board of Education. The answer further denied that appellee had been damaged in the sum of $1,840, or in any other sum. The issue having been made up by a reply, a trial was had by jury, which resulted in a verdict in favor of appellee in the sum of $1,165, of which appellant is now complaining.

The making of the contract and the authority so to do at the time it was entered into by the parties, was not, and could not be, denied. The proper incorporation of appellee under the laws of the State of Ohio, while placed in issue by the pleadings, was abundantly established by uncontradicted evidence. The municipality having authority to make the contract in question, and having made it, no subsequent legislation could abrogate or invalidate it, and therefore no change by legislative enactment in the status of the city, with reference to the control of the school building, could alter

its responsibility to appellee under the contract. This has been elementary since the Dartmouth College case. Appellee fully established its willingness and ability to perform the contract, and as to this there was no contrariety in the evidence. There is no allegation of fraud or corruption in reference to the making of the contract, either in the pleading or the proof; and the breach, so far as the record shows, was wanton and arbitrary. The court, at the close of the testimony, properly instructed the jury peremptorily to find for appellee, and there was no error in its refusal either to allow evidence or to instruct the jury upon the question as to whether or not the furnaces could or would, if built and installed in the school, carry out the terms of the contract. This contention of appellant is based upon the guaranty that the furnaces, when installed, would keep the building sufficiently heated for comfortable occupancy during the coldest winter weather. We think this question too vague and speculative for consideration. Appellee had guarantied in the contract what its furnaces would do when installed in the building. This guaranty had been accepted by appellant as sufficient. It could not, in the face of its arbitrary and wanton breach of the contract, go into a speculation as to whether or not the furnaces would have complied with the guaranty.

But we think the court erred in giving the measure of damages in instruction No. 2, which is as follows: "The measure of damages is the difference between the contract price and what it would have cost to complete the work by plaintiff at the date of the breach of the contract." There should have been added to this: "Less such a sum as will be reasonably sufficient to furnish repairs for the castings of the furnaces, operated with ordinary care, for a period of ten years." In Sedgwick on Damages (section 618) it is

616 KENTUCKY REPORTS. [Vol. 116

City of Ludlow v. Peck-Williamson Heating and Ventilating Co.

said: "Where one engaged in the performance of a contract is wrongfully prevented by the employer from completing it, the measure of damages is the difference between the price agreed to be paid for the work and what it would have cost the plaintiff to complete it. Differently stated, the rule in such a case is recompense to the plaintiff for the part performed and indemnity for his loss in respect to the part unexecuted. The plaintiff is to be placed in the same condition he would have been in if he had been allowed to proceed without interference." In the Am. & Eng. Encycl. of Law (2d Ed.) 1116, the rule is thus stated: "In the cases of contract for the sale of articles to be manufactured, the actual damages suffered are the measure of recovery, and is frequently the difference between the cost of manufacturing and delivering the goods and the contract price; that is, the profit which the plaintiff would have made if the contract had been fully performed." In the case of Hauser, Brenner & Fath Co. v. Tate & Co., 105 Ky., 701, 20 R., 1716, 49 S. W., 475, the court said: "The general rule is that the measure of damages for breach of an executory contract includes loss of profits which grow out of the contract, and which would have been realized from its full performance." In the light of these authorities, which we deem to state the correct rule, what would have been appellee's profit on the contract if it had been allowed to proceed to its full performance? Manifestly, it would have been the difference between the cost to it of properly installing its system of heating and ventilation, etc., in the school building and the contract price, less such a sum as would reasonably keep the castings of the furnaces in repair during the contract period of ten years. This cost of repairing the castings is neither vague nor speculative. Common experience teaches that they would need repairs

from year to year, and under the contract this expense was to be borne by appellee. Its profit upon the whole contract, therefore, can not be ascertained without deducting the reasonable value of these repairs during the contract period. We think, therefore, the court erred in refusing to submit the question of repairs of the castings in the instructions to the jury.

For the reasons indicated, the judgment is reversed for proceedings consistent with this opinion.