LINCOLN et al. v. LEVI COTTON MILLS CO.

(Circuit Court of Appeals, Second Circuit. March 4, 1904.)

No. 84.

**1. BROKERS—AGENCY FOR BOTH PARTIES—CONTRACT OF SALE.**

In an action for breach of a contract of sale, the entire correspondence between defendants and the sellers showed that both parties understood that defendants were middlemen, who had regular customers for whom they sold goods like those in question, and other regular customers for whom they bought. *Held*, that there was no impropriety in such double agency.

**2. SAME—UNDISCLOSED PRINCIPAL.**

Where defendants sold certain yarn for plaintiff, and, on demand, refused or neglected to disclose the name of the buyer after deliveries had been refused, defendants thereby became personally liable on the contract.

**3. SAME—BREACH.**

Where brokers made a contract for the sale of yarn for plaintiff to an undisclosed buyer, and, while the contract was being carried out and deliveries made, the brokers requested a suspension of deliveries until further notice, and subsequently advised plaintiff that their customer had notified them that he would not receive any more goods under the contract, on account of the quality of the goods previously delivered, such notice constituted an unconditional breach of the contract.

**4. SAME—DAMAGES.**

Where yarn was sold by a manufacturer through a broker, the manufacturer, on a breach of the contract by the buyer, was not bound to sell the yarn in the open market, and hold the buyer for the difference between what he realized from such sale and the contract price, but was entitled to recover the profit he would have made if the buyer had not prevented the performance of the contract, less the profit actually received from the sales to others.

In Error to the Circuit Court of the United States for the Southern District of New York.

This cause comes here upon writ of error to review a judgment of the Circuit Court, Southern District of New York, against the plaintiffs in error, who were defendants below. The judgment was entered upon the verdict of a jury, which was directed by the court. The action was brought to recover upon a contract in writing whereby the plaintiff agreed to manufacture certain cotton yarn, and to deliver the same in weekly installments for the sum of 27 cents per pound. It was charged as a breach that the defendants refused to permit plaintiff to proceed with the manufacture and delivery of the goods.

¶ 2. See Brokers, vol. 8, Cent. Dig. § 140.

Howard A. Taylor, for plaintiffs in error.

H. C. Bernstein, for defendant in error.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

LACOMBE, Circuit Judge.   For a considerable time prior to the transactions complained of, defendants' firm had been acting as commission merchants for the plaintiff—selling the plaintiff's goods, making advances thereon, and collecting the accounts therefor.

The following letters and telegrams passed between the parties, evidencing the "written contract" declared upon:

(1) Defendants to plaintiff (telegram) February 21, 1900:

"May we sell 25,000 to 50,000 pounds thirties two-ply skein twenty-seven cents deliveries following present orders.   Please wire quick answer."

(2) Plaintiff to defendants (telegram) same date:

"Sell 25,000, two thousand weekly, 50,000 three possibly four commencing about Aug. 1st: confirm."

(3) Defendants to plaintiff (letter) same date:

"We wired you to-day as follows [quoting the telegram supra] which we now confirm, hoping to have prompt reply."

(4) Defendants to plaintiff (letter) February 23, 1900:

"We have your telegram of the 21st [quoting it].   In reply to this will say that we are negotiating with our customer, but fear that the distant deliveries will prevent our booking for this particular party."

(5) Defendants to plaintiff (telegram) February 26, 1900:

"We have sold for your account 50,000 thirties two-ply skein, 4,000 lbs. weekly August delivery twenty-seven cents."

(6) Defendants to plaintiff (letter) February 26, 1900:

"We enclose order No. 40 for 47,200 pounds No. 30, two, which we have closed in accordance with your telegram, and we are wiring you to this effect to-day.   This customer would like weekly deliveries to begin earlier than August: and to have the weekly amount run up to 7,000 pounds per week. We told him, if we could possibly arrange it, deliveries would begin earlier than August and also if the amount could be increased this should be done."

The "order No. 40," which was inclosed, reads as follows:

"Feb. 26, 1900.   Sold for account of Levi Cotton Mills 47,200 lbs. 30 two skein * * * same as order No. 10 27 cents. * * * Deliveries 4,000 lbs. weekly Aug. 1. * * * Ship to Catlin & Co., Pascoag R. I.
                                                              "Catlin & Co."

On March 3, 1900, defendants directed shipments to be made to Warren, Mass., or Pawtucket, R. I.

(7) Defendants to plaintiff (letter) April 4, 1900:

"This order was originally taken for 50,000 lbs. but in estimating the amount due on our customer's order, the order was sent to you as 47,000 lbs.   We have a letter from this customer asking us to change the order to 50,000 lbs.   Kindly arrange to make this change.   If there is any objection to your doing so, we should be glad to have you advise us and we will notify our customer."

This increase to 50,000 was accepted by plaintiff on April 5th.

Subsequently, when controversy arose, the plaintiff requested the defendants to give the name of their customer who purchased order No. 40, but the request was ignored.

This detailed statement of the correspondence disposes of the first point here argued. Catlin & Co. were agents of the plaintiff to effect sales of yarn. They were also agents of other persons who wanted to buy yarn. Document No. 7, supra, is illuminative of the situation. Manifestly, one of their purchasing customers had applied to defendants to get him a large quantity of yarn. Some they had bought elsewhere, and, upon finding the terms satisfactory, they ordered from plaintiff enough to make up the unfilled balance of their customer's order to them. The entire correspondence shows that both sides understood that defendants were middlemen who had regular customers for whom they sold, and other regular customers for whom they bought. There was no impropriety in such double agency, it being clearly understood by both parties. Talcott v. Chew (C. C.) 27 Fed. 273; Butler v. Thomson, 92 U. S. 414, 23 L. Ed. 684. Having made the contract as agents for an undisclosed principal, and refusing or neglecting to disclose such principal when called upon, they became themselves personally liable on the contract.

The second point advanced by defendants, namely, that the proof fails to show that defendants broke the contract, may be similarly disposed of. On June 4, 1900, defendants wrote to plaintiff that they had received word from their customer that, owing to some change in the market conditions, such customer wished shipments withheld for a time. To this plaintiff replied that it could hold up as long as defendants have some of the other orders for it to work on. On July 5th defendants wrote that the customer was objecting to the mixtures which he had been finding in the yarn, and that he would not want any deliveries before the 1st of August, at least. And again on July 11th that he "has had so much trouble with the yarn that he has notified us that he would not receive any, but we have refused to accept cancellation of the order. Please do not start on this until we advise you." To this plaintiff replied, calling attention to the fact that the customer was complaining before plaintiff had commenced shipping. Subsequently, on September 8th, it wrote to defendants, "How is customer's pulse on 40 order on which you asked us to hold up until further notice?" To this defendants on September 11th replied: "Our customer, order No. 40, has advised us he will not receive any more yarn on that contract on account of the quality of yarn which we have been delivering him." Certainly there was nothing equivocal or indeterminate about this statement. It was the positive, unconditional, and unequivocal declaration of fixed purpose not to perform the contract which the authorities require. Dingley v. Oler, 117 U. S. 490, 6 Sup. Ct. 850, 29 L. Ed. 984; Marks v. Van Eeghen, 85 Fed. 853, 30 C. C. A. 208. We do not find in the further correspondence—either in that portion which was admitted in evidence, or in the part which was excluded—anything which can be construed as a waiver of plaintiff's right to elect to treat this renunciation of the contract as a breach which terminated it.

Some minor points which have been cursorily stated in the brief need not be discussed at length. There was not sufficient evidence

to send the cause to the jury on any theory of an accord and satisfaction covering this claim. The testimony of the witness Burnstine showed quite clearly that the negotiations and payment relied upon to make out this defense related to another matter. As to the measure of damages which was applied, the court followed the rule laid down in Hinckley v. Pittsburgh Steel Co., 121 U. S. 264, 7 Sup. Ct. 875, 30 L. Ed. 967. There was no conflict of evidence as to the items of cost, nor anything in the cross-examination of plaintiff's president which would have warranted the jury in rejecting his statement of such items.

The judgment is affirmed.

The following is the opinion of the court below:

WHEELER, District Judge. This is a motion to set aside a verdict directed by the court. The complainant alleges that "The above-named defendants entered into a contract in writing with the plaintiff, whereby the plaintiff agreed to manufacture for the defendants, at their special instance and request, certain goods, wares, and merchandise, consisting of fifty thousand (50,000) pounds of cotton yarn, and to deliver the same in weekly installments of four thousand (4,000) pounds each, beginning August 1, 1900, for which these defendants agreed to pay to the plaintiff the sum of twenty-seven (27) cents per pound." "And that the defendants refused to permit the plaintiff to proceed with the manufacture and delivery of such goods as in said contract provided, and continued so to refuse to permit the said plaintiff to manufacture and deliver the said goods, or any part thereof." In their answer, after denial of the contract and breach, "the defendants allege that for a considerable period prior to October 26, 1900, they had been acting as commission merchants for the plaintiff, selling the plaintiff's goods, making advances thereon, and collecting the accounts therefor."

Negotiations began by this telegram:

"Boston, Mass., Feby. 21st, 1900.

"Levi Cotton Mills, Rutherfordton, N. C.: May we sell twenty-five to fifty thousand pounds thirties two-ply skein twenty-seven cents deliveries following present orders. Please wire quick answer.

"Catlin & Co."

They resulted in the following letter and accompanying order:

"Boston, Feb. 26th, 1900.

"Levi Cotton Mills, Rutherfordton, N. C.—Dear Sirs: We enclose Order No. 40 for 47,200 pounds No. 30/2, which we have closed in accordance with your telegram, and we are wiring you to this effect to-day.

"This customer would like weekly deliveries to begin earlier than August, and to have the weekly amount run up to 7,000 pounds per week. We told him if we could possibly arrange it, deliveries would begin earlier than August, and also if the amount could be increased this should be done.

"Yours truly,          Catlin & Co. W."

"Sold for account of          Boston, Feb. 26, 1900.
   "Levi Cotton Mills,
   "Order No. 40.
"47,200 lbs. 30/2 skein
     "54 inch reel—2 1/2 oz. skeins 18 turns
Same as Order No. 10
     "27 c. 2% 10th fol. mo.
"Deliveries 4,000 lb. weekly Aug. 1.
"Have deliveries begin before Aug. 1 if possible, and deliveries to run 7,000 lb. wkly if it can be arranged.
   "Ship to Catlin & Co., Pascoag, R. I.
      "Frt. Paid.          Catlin & Co."

The amount was afterwards changed from 47,200 pounds to 50,000, and the plaintiff procured cotton for manufacturing the yarn. On July 5th before time to commence on it for delivery according to the order, the defendants wrote to the plaintiff, "Regarding order No. 40. * * * Please do not start on this until we advise you"—and again on July 11, wrote the same.

The plaintiff wrote to the defendants:

"Rutherfordton, September 8, 1900.

"Messrs. Catlin & Co., Gentlemen: * * * How is customer's pulse on 40 order, on which you asked us to hold up until further notice? * * *

"Yours Respy.,                               Levi Cotton Mills Co.,

"per M. Levi, Pres't."

The defendants answered:

"Boston, September 11, 1900.

"Levi Cotton Mills—Dear Sirs: * * * Our customer order No. 40 has advised us he will not receive any more yarn on that contract on account of the quality of yarn which we have been delivering him. * * *

"Yours,                                      Catlin & Co."

The plaintiff wrote and sent:

"December 31, 1900.

"Messrs. Catlin & Co., New York City—Gentlemen: We hereby request the name of Customer who purchased order No. 40. Please reply promptly. * * *

Levi Cotton Mills,

"per M. Levi, Pres."

To this no answer was received.

Because of the defendants' directions, the plaintiff did not manufacture the goods. Damages for the loss of the order were proved to the amount of the verdict directed. The defendants offered no evidence.

Upon this motion the defendants contend that no contract for the goods binding the defendants was made out, and that no breach of it is shown, if there was. The contention of the defendants as to liability is, in substance, that nothing but agency of the defendants for the plaintiff in the transaction complained of is shown. The plaintiff insists that they became principals. A commission merchant is, in terms, more than a mere agent of one party in making sales, but acts between both in conducting the business. Slack v. Tucker, 23 Wall. 321, 23 L. Ed. 143. In making order 40, in question, the defendants, by the words "sold for account of Levi Cotton Mills," assumed that there was a sale of goods described, upon the terms named, from the plaintiff to some purchaser. If there was no other purchaser, they would stand in the place of one, and be holden, as such, to make good their assumption. The order, when accepted, bound the plaintiff to furnish the goods, and the defendants to take them, for the purchaser they represented they had, or for themselves. If they had one, they were bound to produce him; if not, to stand in his place. They not only did not produce, but withheld knowledge of, such other principal, if there was one, and thus took, or left themselves in, the place of a purchaser, like agents for an undisclosed principal. Story on Agency, § 267. The order is signed by the defendants in their own names, as parties to be charged thereby, within the statute of frauds. Their liability is that of the one giving the order which they desired to have filled, and which by acceptance became a contract of the plaintiff to make, and of the defendants to take, the goods according to the terms of the order.

There was considerable correspondence about this order besides that quoted, but at no time did the defendants revoke the direct requests of July 5th and July 11th not to start on the order until they should advise; and matters so remained till the peremptory information on September 11th that no more would be received on that order. After these directions, the plaintiff would not seem to have been warranted in proceeding with the manufacture of the goods at the expense of the defendants; nor would waiting for their advices accordingly, under the circumstances, be an abandonment or waiver of their rights under the contract. The defendants had a right to stop the manufacture and take the consequences. This is what they appear to have preferred. The liability for damages for the breach followed.

Motion overruled.  .