## WHITE & HAMILTON LUMBER COMPANY *v.* LYNCH.

1. "The seller's measure of damages resulting from the purchaser's breach is, as to the lumber cut and tendered under the terms of the contract, the difference between the contract price and the market price at the time and place of delivery." This is the ruling of the Court of Appeals, and states the correct measure of damages for the purchaser's breach of the contract as to the lumber cut and tendered under the terms of that instrument.

2. Where there is an anticipatory breach of the contract and the seller accepts the tender of breach, bringing suit upon the anticipatory breach to recover damages for the refusal to accept other installments of lumber not cut and tendered at the time of such breach, the measure of damages is the difference between the contract price and the cost of production.

No. 4278. NOVEMBER 19, 1924.

Certiorari; from Court of Appeals. 31 *Ga. App.* 697.

*Hawes Cloud* and *Alvin G. Golucke,* for plaintiff in error.

*I. S. Peebles Jr.,* and *J. A. Mitchell,* contra.

HINES, J. Lynch sued White & Hamilton Lumber Company for breach of a contract, which in substance is as follows: (1) That the party of the first part, the plaintiff, agrees to sell to the second party all pine lumber which he saws from timber on certain described tracts of land in McDuffie County, for and during the next 18 months, at and for the sum of $20 per thousand feet, on sticks at the mill, same to be located on one of said tracts of land. First party agrees to begin cutting said timber into lumber within the next sixty days, and to continue the operation of his mill with all reasonable speed, cutting not less than seventy-five thousand feet of lumber per month during the life of this contract, provided normal working conditions shall obtain for and during said period. The lumber is to be cut into one-inch boards, running four, six, eight, ten, and twelve inches in widths, and ten, twelve, and sixteen feet in lengths; is to be sawed so as to be delivered in good merchantable condition, and is to hold up full width and thickness

when dry., (2) The first party is to stack all of the lumber as it is carried from the saw, same to be stacked with air space full width of plank, and not less than 100 feet from the mill, and is to have the lumber so stacked that the second parties may check it up every two weeks during the life of the contract. (3) The second parties agree to buy from the first party all pine lumber cut as aforesaid, and to pay for same the price above specified, and agree to receive the lumber and pay for same every two weeks; that is to say, the second parties will go to the mill once every two weeks for the purpose of checking all lumber which has been cut and stacked in accordance with the specifications above set forth in this contract, and, after checking the lumber for the purpose of ascertaining the number of feet, will then and there receive all lumber ready for delivery by the terms of the contract, and will pay the party of the first part for all such lumber so received, on sticks at the mill, settlement to be made at the rate of the price above specified.

When the case came on for trial the jury rendered a verdict in favor of the plaintiff; and the defendant made a motion for new trial, which was overruled. Movant thereupon excepted, and by writ of error the case was taken to the Court of Appeals. The Court of Appeals reversed the judgment of the court below, with direction that it stand affirmed upon certain conditions stated. The plaintiff in error in the Court of Appeals thereupon brought the case to the Supreme Court for review by writ of certiorari.

What is the measure of damages which the seller can recover when the buyer of goods to be manufactured, after a portion of the goods have been made, repudiates the contract, and declines to pay for the goods already manufactured, and to accept and pay for those which have not been manufactured? The general rule is that the measure of damages, when the buyer repudiates the contract and refuses to receive and accept the goods, is the difference between the contract price and the market value of the goods at the time and place of delivery. *Groover* v. *Warfield*, 50 *Ga.* 644 (4); *Camp* v. *Hamlin*, 55 *Ga.* 259; *Georgia Refining Co.* v. *Augusta Oil Co.*, 74 *Ga.* 497 (2); *Huggins* v. *Southeastern Lime &c. Co.*, 121 *Ga.* 311 (5) (48 S. E. 933); *Sizer* v. *Melton*, 129 *Ga.* 143 (58 S. E. 1055); *Phosphate Mining Co.* v. *Atlanta Oil &c. Co.*, 20 *Ga. App.* 660 (93 S. E. 532); *Southern Upholstering Co.* v.

*Lieberman,* 27 *Ga. App.* 703 (109 S. E. 509). . This general rule is stated in the Civil Code (1910), § 4131. · It is applicable where the seller has the goods on hand, and can deliver them to the buyer. Is this measure of damages applicable where the seller is to manufacture the goods, and, before the major portion of the goods are manufactured, the purchaser repudiates his contract, and declines to accept and pay for any of the goods? This precise question has never been decided by this court, so far as we have been able to ascertain from such examination of our reports as we have been able to make. The authorities in other jurisdictions are not in harmony on this question. In actions to recover damages from purchasers for breaches of their contracts to accept and pay for goods to be manufactured, the breaches occurring before the goods are manufactured, the measure of damages has been differently stated as being (1) the difference between the contract price and the cost of manufacture, (2) the difference between the contract price and the market value of the goods, and (3) the profits which the seller would have made on the transaction, based upon the difference between the contract price and the cost of production. 35 Cyc. 594. The first and third statements of the measure of damages are practically the same. Is the measure of damages as to goods not manufactured the difference between the contract price and the market value of goods when the purchaser breaches the contract of sale, after some of the goods have been manufactured, but before the major portion has been manufactured? In other words, is the measure of damages, in such a case, the same as to the manufactured and the unmanufactured goods?

We do not think that the measure of damages in such a case is the same, both as to the manufactured and unmanufactured goods. It is well settled that a party to an executory contract may always stop performance by the other party by an explicit direction to that effect, though he thereby subjects himself to the payment of such damages as will compensate the other party for the loss he has sustained by reason of having his performance stopped at that stage in its progress. In such a case the contract is not rescinded, but broken; and while the party not at fault has the right to deem it in force for the purpose of the recovery of his damages, he is under no obligation, for that purpose, to tender complete perform-

ance, nor has he the right to unnecessarily enhance the damages by proceeding, after the countermand, to finish his undertaking. *Oklahoma Vinegar Co.* v. *Carter*, 116 *Ga.* 140 (42 S. E. 378, 59 L. R. A. 122, 94 Am. St. R. 112) ; *Rounsaville* v. *Leonard Mfg. Co.*, 127 *Ga.* 735 (56 S. E. 1030) ; *Linder* v. *Cole &c. Co.*, 10 *Ga. App.* 102 (72 S. E. 719). The seller thus having no right to complete the manufacture of the goods under such circumstances, he can not complete the manufacture and then hold the purchaser liable for damages based upon the completion of the agreement to manufacture and deliver the goods to the buyer.

Damages are given as compensation for the injury sustained. Civil Code (1910), § 4390. What is the injury sustained by the seller under such circumstances? His injury would not be the same as that which he would sustain if he had completed the manufacture of the goods before the breach of the contract by the other party. The injuries being different, it necessarily follows that the compensation should not be the same. In a case where the goods have been manufactured at the time of the breach and have a market value, the difference between the contract price and the market value is the proper measure of damages; but if the goods have not been manufactured, the proper measure of damages is the difference between the contract price and the cost of manufacturing them. This measure of damages is sustainable both on principle and by the weight of authority. To adopt a contrary rule and to allow the vendor to recover upon the theory that the goods had been manufactured would be giving to him more than his actual damages. *Moline Scale Co.* v. *Beed*, 52 Iowa, 307 (3 N. W. 96, 35 Am. R. 272). It would be compensating him for an injury which he did not sustain. It would be permitting him to recover expenses which he had not incurred. Under such a measure of damages the seller would receive more compensation than sufficient to meet the injury which he had sustained. This view is sustained by the great weight of authority. 35 Cyc. 596; River Spinning Co. v. Atlantic Mills, 155 Fed. 466; Tufts v. Weinfeld, 88 Wis. 647 (60 N. W. 992) ; Lincoln v. Levi Cotton Mills Co., 128 Fed. 865 (63 C. C. A. 333) ; Kingman v. Hanna Wagon Co., 176 Ill. 545 (52 N. E. 328) ; Ludlow v. Peck-Williamson &c. Co., 116 Ky. 608 (76 S. W. 377) ; Dryfoos v. Uhl, 69 App. Div. 118 (74 N. Y. Supp. 532) ; Kimball v. Deere, 108 Iowa, 676 (77 N. W. 1041) ;

Cleveland-Canton Springs Co. v. Goldsboro Buggy Co., 148 N. C. 533 (62 S. E. 637); Kingman v. Western Mfg. Co., 92 Fed. 486 (34 C. C. A. 489); Hinckley v. Pittsburgh Bessemer Steel Co., 121 U. S. 264 (7 Sup. Ct. 875, 30 L. ed. 967); *Carolina Portland Cement Co.* v. *Columbia Improvement Co.,* 3 *Ga. App.* 483 (60 S. E. 279). In River Spinning Co. v. Atlantic Mills, supra, the court said: "Where a purchaser refuses to take goods bought which the seller has not on hand, but is to manufacture or purchase, the measure of his damages recoverable for breach of the contract is not the difference between the contract price and the market price of the goods at the time of the breach, but the actual profit he would have made on the sale." In Tufts v. Weinfeld, supra, the Supreme Court of Wisconsin said: "The measure of damages in a suit for the breach by a vendee of a contract for the purchase of an article to be manufactured by the vendor is the net profits which the vendor would have realized, had the contract been performed by both parties." In Dryfoos v. Uhl, supra, the Court of Appeals of New York said: "In an action to recover damages for the breach of a contract by which the plaintiffs agreed to manufacture and sell to the defendant a quantity of garments, which breach grew out of the defendant's refusal to accept the garments, the measure of damages is the difference between the contract price and the actual cost of manufacturing and delivering the goods." In Cleveland-Canton Springs Co. v. Goldsboro Buggy Co., supra, the Supreme Court of North Carolina said: "Where defendant contracted to take certain springs to be manufactured by plaintiff at a stated price, an instruction that the measure of plaintiff's damages for breach of the contract was the difference between what it would have cost plaintiff to carry out its part of the contract and the contract price was correct." In Kingman v. Western Mfg. Co., supra, the United States Circuit Court of Appeals said: "The measure of damages for breach of a contract to purchase goods to be manufactured by the seller, where the goods are not manufactured and ready for delivery at the time the seller is notified that they will not be accepted, if no materials have been purchased, and no labor expended towards their manufacture, is the difference between the cost to the seller of their manufacture and delivery and the contract price, if such price is greater than their cost." In Hinckley v. Pittsburgh Bessemer Steel Co., supra, the Supreme

Court of the United States said: "The defendant agreed, in writing, to purchase from the plaintiff rails to be rolled by the latter, 'and to be drilled as may be directed,' and to pay for them $58 per ton. He refused to give directions for drilling, and, at his request, the plaintiff delayed rolling any of the rails until after the time prescribed for their delivery, and then the defendant advised the plaintiff that he should decline to take any rails under the contract: *Held:* . . The proper rule of damages was the difference between the cost per ton of making and delivering the rails and the $58."

We could multiply authorities and citations sustaining the rule of damages stated above; but we deem it unnecessary. While this court so far has never passed upon this precise question, it has in effect decided the principle involved. In *Wallace* v. *Tumlin*, 42 *Ga*. 462, which involved a breach of contract between the Western & Atlantic Railroad and Tumlin & Stegall, in which the latter were to furnish to the former water for a specific period, this court held: "That the actual damages which the plaintiff was entitled to recover embraces the difference between the cost of doing the work and the price to be paid for it." So we are of the opinion that, under the facts of this case, the plaintiff was entitled to recover, as to the lumber manufactured and tendered to the defendants, the difference between the contract price and the market value of the lumber at the time and place of delivery; and, as to the unmanufactured lumber, the difference between the contract price and the cost of manufacturing the product. The rulings of the Court of Appeals being in accordance with these views, we think that its judgment should be affirmed.

*Judgment affirmed. All the Justices concur.*