# Hawkins v. Midland Flour Milling Company.

(Decided November 28, 1930.)

(Rehearing Denied February 6, 1931.)

R. L. MYRE and C. C. GRASSHAM for appellant.

BRADSHAW, MacDONALD & McMURRY and W. A. BERRY for appellee.

OPINION OF THE COURT BY JUDGE GRIGSBY—Affirming.

On April 27, 1928, appellant sent to appellee the following telegram:

"Paducah, Ky., April 27, 1928.

"Midland Flour Milling Company, Kansas City, Mo.

"Quote grades suitable for domestic consumption town quiet stage coach halloween also selfrising baking samples also little pig Mids maybe we are going to sell some hard wheat products from now on am supplied for immediate needs but lets get

acquainted and prepare for whats in store do you think present values will hold after harvest and could you book now into September.

"Herbert Hawkins."

—to which the appellee replied on the same date as follows:

"April 27, 1928, 2:45 p. m.

"Herbert Hawkins, Paducah, Ky.

"Telegram received subject confirmation wire acceptance quote town crier nine fifteen stage coach eight ten halloween seven eighty basis ninety-eight cotton all plain flours, make all grades selfrising except town crier twenty-five cents barrel additional stop. In addition above grades are now manufacturing a semi-soft low portion patent packed under brand Daisy which basis today's market quote seven forty basis ninety-eight plain. This grade proving very popular and have secured large volume business on it short time on the market stop. Bran thirty-nine fifty gray shorts forty-four fifty Pigmidds forty nine-fifty mixed cars with flour only shipment by July fifteenth stop. Account crowded situation compelled limit mixed cars minimum hundred barrels flour not more than total five tons shorts Pigmidds combined, balance brand stop. Market has advanced sharply thirty days and many well posted grain men predict still further advances, we prefer staying fairly close to shore unable book now for shipment in September.

"The Midland Flour Milling Company,

"(Prepaid)."

On the next day, to-wit, April 28, 1928, the following telegrams passed between the parties:

"10:32 A. M. Paducah, Ky. Apl. 28 '28

"Midland Flour Milling Company, Kansas City, Mo.

"Book five hundred Daisy (stop) But we cant take out until our market here cleans up low priced stock (stop) Other grades too close priced our established brands (stop) Colorado soft patents quoted nine twenty and we get fifteen cents brokerage credited (stop) You should allow us this brokerage as no one is entitled to any divy on voluntary business

(stop) We sell twenty five thousand barrels Colorado flour annually.

"Herbert Hawkins."

"10:40 A. M.'        Paducah, Ky. Apr. 28

"Midland Flour Milling Company, Kansas City, Mo.

"Express today half dozen each plain and self-rising Daisy and make booking seven fifty bbs instead of five.

"Herbert Hawkins."

"4/28/28   11:00

"Herbert Hawkins, Paducah, Kentucky.

"Have booked you seven hundred fifty barrels Daisy plain flour seven forty halves cotton Paducah Kentucky shipment by July fifteenth arrival draft terms selfrising to apply twenty five cents per barrel over thanks for order, stop. Original price was figured so low and market up three cents this morning before order received therefore impossible credit you with fifteen cents brokerage for inquoting price no brokerage or selling expenses was included. Mighty glad to get started with you shall we quote in future to include brokerage or net.

"The Midland Flour Milling Company."

"4/28/28   12:30

"Herbert Hawkins, Paducah, Kentucky.

"Please wire us your approval our booking made you this morning mentioning contract time to July fifteenth price net to us no commission.

"The Midland Flour Milling Company."

"2:34 P.        Paducah, Ky., Apl. 28.

"Midland Flour Milling Company, Kansas City, Mo.

"All right bought seven hundred fifty Daisy seven forty basis halves cotton July fifteenth be sure express samples today party here Monday for same.

"Herbert Hawkins."

On April 30, 1930, the Midland Flour Milling Company wrote to appellant, Herbert Hawkins, a letter inclosing confirmation in which they said in part: "We

are inclosing our confirmation covering your purchase of 750 barrels of Daisy flour thru an exchange of wires between you and ourselves on April 28th." The appellant did not sign or return this confirmation, nor did he reply to the letter. On June 18, 1928 appellee sent to appellant the following wire:

"Western Union

"6/18/28  4:45

"Herbert Hawkins,           Paducah, Kentucky.

"Have some of your sacks on hand anxious maintain operating schedules on Daisy flourmill running this grade now, will appreciate wire instructions on  portion  your  contract,      Answer  our expense.

"Midland Flour Milling Company."

—to which appellant did not respond. On July 10, 1928, appellee sent to appellant this wire:

"7/10/28  9:20

"Herbert Hawkins,           Paducah, Kentucky.

"There is due you seven hundred fifty barrels Midland Daisy flour seven forty ninety eights cotton Paducah booked April twenty-eight nineteen twenty eight for shipment to July fifteenth, please wire or mail specifications shipping instructions to reach us before termination date of contract.

"The Midland Flour Milling Company

—to which appellant did not respond. Then on July 26th appellee sent the following wire:

"Western Union

"Report Delivery          7/26/28.  4:30
"Herbert Hawkins,           Paducah, Kentucky.

"Have terminated basis close market today contract number six eight seven eight dated April twenty-eight nineteen twenty-eight covering seven hundred fifty barrels Daisy flour seven dollars forty cents per barrel basis ninety-eight cotton Paducah shipment to July fifteenth nineteen twenty-eight attaching our invoice covering loss account your

failure comply with contract to sight draft and drawing on you thru First National Bank, Paducah. "The Midland Flour Milling Company."

This suit was then instituted in the McCracken circuit court by appellee against appellant to recover damages for alleged breach of contract, based on the above-quoted telegrams. Issues were properly joined, and by agreement of parties the case was submitted to the court for trial without the intervention of a jury. On a motion for separation of the law and facts the court entered the following judgment:

"The court states that this cause came on for trial and by agreement of parties a jury was waived and same was tried before the court, and the court now desires to and does separate its findings of fact and law.

"The court finds the facts to be as disclosed by the Stenographic report of the evidence taken in this case, and finds that the contract was complete between the parties, by the terms of which the defendant purchased 750 barrels of flour from the plaintiff, at the price of $7.40 per barrel, on April —, 1928, to be delivered not later than the 15th day of July, 1928; that the defendant having been requested several times to give shipping orders showing that the plaintiff was ready, willing and able to deliver said flour at any time called for up to the 15th day of July, 1928, that the defendant breached his contract of purchasing said flour. And the court further finds the facts to be that the contract price of said flour being $7.40 a barrel, that on the 16th day of July, 1928, the market value of such flour had been reduced and on said date was only worth in the open market $6.00 a barrel, or $1.40 a barrel less than the contract price; that, therefore, there was a loss to the plaintiff, by reason of the defendant not carrying out his contract, of $1.40 a barrel on 750 barrels of flour, amounting to $1,050.00.

"The court finds as a matter of law that the contract was complete under the telegrams sent and received by the respective parties, and admitted in evidence as having been sent and received, and further finds as a matter of law that there was a breach of said contract upon the 16th of July, 1928, and further finds as a matter of law that by virtue of said

breach, the plaintiff was damaged by the defendant in the sum of $1,050.00.

"Based upon the foregoing conclusions of the court, both as to fact and law, it is adjudged by the court that the plaintiff recover of the defendant the sum of $1,050.00, with interest from the 16th of July, 1928, at 6% per annum, for which an execution is awarded, to all of which the plaintiff and defendant, each, object and except and prays an appeal to the Court of Appeals, which is granted."

Appellant's motion and grounds for a new trial having been overruled, an appeal was duly prosecuted to this court. Numerous errors are alleged to have been committed by the trial court. The main contention, however, is that the telegrams in themselves are incomplete negotiations and merely a proposition to purchase, and were sent for the purpose of negotiating a contract of sale, and that they in themselves did not complete or consummate a sale or purchase of 750 barrels or any quantity. Appellant further insists that, under the custom and usage of the flour trade, any order, however emphatic, given for a quantity of flour, even though accepted, is understood to be and is not a contract unless and until the seller and purchaser confirm same by a uniform sales contract, such as appellee sent to appellant, and which was not confirmed by the appellant at any time. It is further insisted that appellant asked for samples of flour, the quality of which was unknown to appellant, and that under the custom and usage of the flour trade, the samples not proving satisfactory, the appellant had the right of rejection of the order. In our opinion appellant's contention cannot be sustained. We are of the opinion that the contract was complete between the parties, and that under same appellant bought from appellee 750 barrels of flour to be delivered not later than July 15, 1928. The rule is that "custom or usage may properly be received to ascertain and explain the meaning and intention of the parties to a contract, . . . the meaning of which could not be ascertained without the aid of such extrinsic evidence, where the parties knew the existence of the custom or usage, and contracted in reference to it." Robinson v. U. S., 13 Wall. (80 U. S.) 363, 20 L. Ed. 653. In Oelricks v. Ford, 23 How. (64 U. S.) 49, 63, 16 L. Ed. 534, the Supreme Court of the United States says: "As a general rule, there must be ambiguity or uncertainty

upon the face of the written instrument, arising out of the terms used by the parties, in order to justify the extraneous evidence, and, when admissible, it must be limited in its effect to the clearing up of the obscurity. It is not admissible to add to or engraft upon the contract new stipulations nor to contradict those which are plain."

In our opinion there was no ambiguity or uncertainty in this contract, and it was not necessary to resort to any custom and usage in order to determine the meaning of these telegrams. The evidence as to the custom claimed by the appellant is clearly inconsistent with and repugnant to the contract as completed by the interchange of telegrams, and, being so, could not vary or alter the terms of that contract. Ten Broeck Tyre Co. v. Rubber Trading Co., 186 Ky. 526, 217 S. W. 345.

It is next contended that, if appellee is entitled to recover, he should recover only nominal damages. We are of opinion that the trial court did not err in fixing the damages at $1.40 a barrel for the reason that the evidence shows that the contract price was $7.40 per barrel, and that the market price on July 15, 1928, was $6 per barrel. It is a well-settled rule in this jurisdiction that the measure of damages in such cases is the difference between the contract price and the market price at the place of delivery. Hauser, Brenner & Fath Co. v. Tate & Co., 105 Ky. 701, 49 S. W. 475; Miles v. Miller, 12 Bush, 134; Frazier v. Clark, 88 Ky. 260, 10 S. W. 806, 11 S. W. 83.

This case was tried before the court by consent of parties without the intervention of a jury. The rule is that such decision of the trial judge is given the same weight as that given to the verdict of a properly instructed jury. Bell v. Wood, 87 Ky. 56, 7 S. W. 550.

On the entire record we are of opinion that the trial court did not err to the prejudice of the substantial rights of the appellant, and the judgment is therefore affirmed.