OKLAHOMA VINEGAR COMPANY *v.* CARTER & FORD.

1. When two parties have entered into a written contract for the purchase and sale of goods, neither a countermand of the order for the shipment of the goods, nor a notice by the purchaser to the seller that he will not accept and receive them, is effectual to cause a rescission of the contract. Such a result can not be accomplished without the assent of the seller.

2. The notice indicated above, under the common law, operates as a breach of the contract by the vendee, and in such a case the remedy of the vendor is in an action to recover damages for such breach. Under the statute, the vendor, after the purchaser refuses to take and pay for the goods, may in an action recover the price of the goods, where it appears that, after default of the purchaser, he stored and retained them for such purchaser. Under the evidence the statutory remedy was not available to the plaintiff in the present case, and his only remedy was a suit to recover damages for the breach of the contract. His action, as brought, to recover the contract price of the goods, was not maintainable.

Submitted May 1,—Decided August 7, 1902.

Complaint. Before Judge Dart. City court of Douglas. December 24, 1901.

*Quincey & McDonald,* for plaintiff.
*Perry & Tipton,* for defendants.

LITTLE, J. The Oklahoma Vinegar Company brought an action on an account against the firm of Carter & Ford, to recover the sum of $72. The action was predicated on an order given in writing by Carter & Ford, a copy of which was attached to the petition, which is as follows:

"Order No. 838, Date 3/6, 1901.

"Oklahoma Vinegar Co.: Ship to Carter & Ford, Post-Office Willacoochee, State Ga., R. R. point on B. & W. R. R. Terms Apr. 1st 60, or 3% off for cash in ten days. Ship at once. [Here fol-

lows a list of articles, one of which is cherry phosphate.] Frt. prepaid. We guarantee that our fruit phosphates are not subject to any special tax, either State or county or internal revenue; also that they will not intoxicate. We guarantee to replace all sour or spoiled goods, free of expense.　　　　　Oklahoma Vinegar Co.

"Customer sign here: Carter & Ford.

"Salesman sign here: R. B. Lashman.

"This order not subject to countermand."

The defendants answered, denying indebtedness as alleged, setting up that they never received the goods. They admitted that they signed the order, but said that they did so under a misapprehension, and that the same was canceled in a very short time after it was signed. For further plea they set up that if plaintiff had any right of action at all in the premises, which they deny, it was for damages on breach of contract, and it could not recover on open account, and this action should be dismissed. The case was submitted by agreement, to be heard by the judge without the intervention of a jury, on the following agreed statement of facts: "The defendants, Carter & Ford, by and through R. L. Ford, the junior member of said firm of Carter & Ford, gave the salesman of the plaintiff, the Oklahoma Vinegar Co., the order [heretofore set out]. A few minutes after giving the order the said Ford saw William Moore and purchased a whole barrel of cherry phosphate from him, that bore the same name, and that he judged from the taste and general appearance to be the same goods as the sample shown him by the salesman of plaintiff, which samples he tasted, and from which he gave the order; for which whole barrel he paid Moore one dollar and a quarter, and that he immediately went to the salesman of the plaintiff and countermanded the order and notified him that he would not accept the goods if shipped. The said Ford also immediately mailed, under special delivery postage, a letter to the plaintiff, countermanding the said order and notifying that they (the defendants) would not accept and receive the goods ordered, and this letter was received by the plaintiff before the goods were separated from the common stock and delivered to the railroad for shipment; that after this the plaintiff delivered the goods ordered to the railroad and shipped them consigned to defendants at Willacoochee, Georgia, but the defendants declined to receive the goods, allowed them to remain in the depot, and notified the plaintiff of

their refusal to accept them ; that the goods ordered and described in the order hereto attached were articles of merchandise kept in common stock and sold generally by the plaintiff; that there was no consideration for the contract not to countermand the order, which appears at the bottom of the order; that the cherry phosphate Ford bought from Moore was not salable ; that he still has the greater part of it on hand; tried to give it away to induce trade, but it rather had the effect to run off trade, and was worthless, but Ford does not know whether this he bought from Moore was from the same house (plaintiff's) or not, and does not know how long Moore had had the said barrel in stock prior to this purchase from Moore." The presiding judge rendered a judgment in favor of the defendants for costs ; whereupon the plaintiff made a motion for a new trial, which being overruled, it excepted. The grounds of this motion were that the verdict was contrary to law and to the evidence. The answer of the defendants raises two questions: First, are the defendants liable to the plaintiff under the contract, notwithstanding the fact that the order for the goods was countermanded before delivery, and notice given to the plaintiff, before shipment, that the defendants would not accept and receive the goods which they had ordered ? Second, should the action on open account abate, because the defendants, if liable at all, were only so in an action to recover damages for a breach of the contract ?

1. We find no difficulty in disposing of the first of these questions. The contract made by the parties was a good and valid one in writing, by the terms of which plaintiff agreed to sell and deliver to the defendants certain goods named therein, and the defendants agreed to pay for the same when so delivered. It was an executory contract, and bound both parties. Without any regard to the entry which appeared below the signature of the parties, that the order was not subject to countermand, it may be stated in general terms that, as the contract was the act of both of the parties, it could not be legally dissolved and rendered nugatory except with the consent of each ; and the countermand and notice to the plaintiff that the defendants would not be bound by its terms did not have the effect of rescinding the contract unless the plaintiff agreed to such rescission. It appears from the agreed statement of facts that the plaintiff did not so agree ; hence, no rescission of the contract was effected.

2. The second proposition raised by the plea — that if the plaintiff

had any right of action it was for damages for a breach of the contract, and not on open account to recover the price of the goods—is one more difficult of solution. In legal effect, this part of the plea is to be treated as a plea in abatement of the action. Under it the question arises whether the notice of the countermand which defendants gave plaintiff, in advance of the time of performance, was effectual to cause a breach of the terms of the contract. It is undoubtedly true, as a general rule, that, after the breach of an executory contract by either party, the only remedy of the other is to recover such damages as he may have sustained in consequence of the breach. If the notice did not under the law cause a breach of the contract, then the seller would have the right to perform his part of the contract and force the buyer to comply with his obligation,—that is, pay the contract price for the goods. But the authorities differ as to the effect of a notice that the buyer will not, at the time fixed for the performance of the contract, accept the goods purchased. By some eminent law writers, and in many adjudicated cases, the proposition is laid down that "the notice of an intended breach will operate as a breach only if accepted and acted upon as such by the other party; who may, if he pleases, disregard the notice and insist upon performance according to the contract." Leake's Digest of the Law of Contracts, 872. Mr. Parsons in his Law of Contracts, vol. 2, *676, says: "If one bound to perform a future act, before the time for doing it declares his intention not to do it, this is no breach of his contract; but if his declaration be not withdrawn when the time comes for the act to be done, it constitutes a sufficient excuse for the default of the other party." Mr. Benjamin in his work on Sales, 6th Am. ed. § 1118, says: "The date at which the contract is considered to have been broken is that at which the goods were to have been delivered, not that at which the buyer may give notice that he *intends* to break the contract and to refuse accepting the goods." This doctrine has also been sustained by the Supreme Judicial Court of Massachusetts, where it was ruled that an action for the breach of a written agreement to purchase land, brought before the expiration of the time given for the purchase, can not be maintained by proof of an absolute refusal on the defendant's part ever to purchase. 114 Mass. 530.

The contrary of this doctrine was stated to be the law, by Cockburn, C. J., in the case of Frost v. Knight, L. R. 7 Ex. 111, in the

following language: "The promisee, if he pleases, may treat the notice of intention as inoperative, and await the time when the contract is to be executed, and then hold the other party responsible for all the consequences of non-performance; but in that case he keeps the contract alive for the benefit of the other party as well as his own: he remains subject to all the obligations and liabilities under it, and enables the other party not only to complete the contract, if so advised, notwithstanding his previous repudiation of it, but also to take advantage of any supervening circumstance which would justify him in declining to complete it; on the other hand, the promisee may, if he thinks proper, treat the repudiation of the party as a wrongful putting an end to the contract, and at once bring his action as on the breach of it; and in such an action he will be entitled to such damages as would have arisen from non-performance of the contract at the appointed time, subject, however, to abatement in respect to any circumstances which may have afforded him the means of mitigating his loss." Mr. Mechem in his treatise on the Law of Sales of Personal Property, § 1089, declares that "this doctrine is well settled in England, and is adopted by the majority, though not by all of the American courts"; and after examination we find that rulings have been made to this effect in a great number of the courts of last resort in several of the United States. Crabtree *v.* Messersmith, 19 Iowa, 179; McCormick Machine Co. *v.* Markert, 107 Iowa, 340; Kadisk *v.* Young, 108 Ill. 519; Roebling Co. *v.* Lock Stitch Fence Co., 130 Ill. 660; Dugan *v.* Anderson, 36 Md. 567; Pancake *v.* Campbell, 44 W. Va. 82; Howard *v.* Daly, 61 N. Y. 362; Windmuller *v.* Pope, 107 N. Y. 674; Hosmer *v.* Wilson, 7 Mich. 294; Platt *v.* Brand, 26 Mich. 173; Zuck *v.* McClure, 98 Pa. St. 541; Hocking *v.* Hamilton, 158 Pa. St. 107. Mr. Mechem further says (§§ 1091–2): "Where goods have been ordered from a wholesale dealer, but before shipment or other appropriation the order is recalled, . . the law is well settled that a party to an executory contract may always stop performance on the other side by an explicit direction to that effect, though he thereby subjects himself to the payment of such damages as will compensate the other for the loss he has sustained by reason of having his performance checked at that stage in its progress." "The contract is not rescinded, but broken; and while the other party has the right to deem it in force for the purpose of

the recovery of his damages, he is under no obligation, for that purpose, to tender complete performance, nor has he the right to unnecessarily enhance the damages by proceeding, after the countermand, to finish his undertaking." An examination discloses that this language fairly states the rule laid down in the cases of Davis v. Bronson, 2 N. D. 300; Gibbons v. Bebte, 51 Minn. 499; Clark v. Marsiglia, 1 Denio, 317; Danforth v. Walker, 37 Vt. 239, 40 Vt. 257; Moline Scale Co. v. Beed, 52 Iowa, 307; Butler v. Butler, 77 N. Y. 472; Unexcelled Fire Works Co. v. Polites, 130 Pa.. St. 536; Hosmer v. Wilson, 7 Mich. 294; Ault v. Dustin, 100 Tenn. 366. It has also been repeatedly ruled that the remedy of the seller who has received such a notice from the buyer is an action for the breach of the contract, and not for goods sold or for labor and material; that the seller is entitled to pursue his remedy at once, because the direction of the buyer not to proceed is the equivalent of an absolute physical inability, etc. In the case of Roehm v. Horst, 178 U. S. 1, the Supreme Court of the United States declared that "after a careful review of all the cases, American and English, relating to anticipatory breaches of an executory contract by a refusal on the part of one party to perform it, the court holds that the rule laid down in Hochester v. De la Tour, 2 El. & Bl. 678, is a reasonable and proper rule to be applied" in the case then being considered, and "that rule is, that, after the renunciation of a continuing agreement by one party, the other party is at liberty to consider himself absolved from any future performance of it, retaining his right to sue for any damages he has suffered from the breach of it; but that an option should be allowed to the injured party, either to sue immediately, or to wait till the time when the act was to be done, still holding it as prospectively binding for the exercise of this option." See also Mechem on Sales, § 1699, and cases cited.

It must be ruled, from a consideration of the numerous cases cited above and the rule therein enunciated, which seems to be founded both in reason and justice, that a notice from the buyer of goods, such as appears in this case, operates as a breach of the contract; and without attempting to harmonize the numerous cases arising in other jurisdictions, as to the remedy which the law affords to the seller under such circumstances, we can reach such conclusion also on the law contained in our Civil Code, § 3551,

which prescribes that where the purchaser refuses to take and pay for goods bought, " the seller may retain them and recover the difference between the contract price and the market price at the time and place for delivery ; or, he may sell the property, acting for this purpose as the agent of the vendee, and recover the difference between the contract price and the price on resale ; or, he may store or retain the property for the vendee and sue him for the entire price." While under this last provision the seller might have stored and retained the property for the buyers after notice by the buyers that they would not receive the goods, it is sufficient to say that it did not do so, but without so doing sought to recover the price agreed on. Had it done so it might have brought an action against the buyers for the entire price of the goods. On the contrary, instead of storing and retaining the goods after the notice, it delivered them to the carrier, doubtless under the well-recognized general rule that, in ordinary transactions of bargain and sale of goods, a delivery to the carrier is a delivery to the seller. It may be that the provisions of this section of our code do, to some extent at least, modify the rule found in some of the authorities above cited ; but under its plain provisions, the remedy of the seller in this case was not to sue for the price of the goods, but it was remitted to its action for a breach of the contract.

It was ruled in the case of the Unexcelled Fire Works Co. *v.* Polites, 130 Pa. St. 536, that " where goods were ordered under a simple contract of bargain and sale, and notice was given by the buyer to the seller not to ship them, in advance of delivery and before they were separated from the bulk and set apart to the buyer, such notice is not only a repudiation of the contract but also a revocation of the carrier's agency to receive them ; and the refusal of the buyer to receive the goods when delivery is tendered by the carrier does not make him liable for their contract price, but only for special damages for the refusal to receive them." In the opinion in that case Clark, J., said : " It is plain that the notice given to the plaintiffs by the defendants not to ship the goods was a repudiation of the contract; it was not a rescission, for it was not in the power of any one of the parties to rescind ; but it was a refusal to receive the goods, not only in advance of the delivery, but before they were separated from the bulk, and set apart to the defendant ; the direction not to ship was a revocation of the carrier's

agency to receive, and the plaintiffs thereby had notice of the revocation. . . The action, therefore, could not be for the price, but for special damages for a refusal to receive the goods when the delivery was tendered." As we have seen, the plaintiff did not store or retain the goods for the vendees after the latter had given notice that they would not take and pay for the goods, so as to obtain the statutory right to sue for the value of the goods; and not having done so, and the legal effect of the notice given being to cause a breach of the contract, the only remedy which the plaintiff had was to institute an action to recover damages for the breach. Hence its petition, which treated the contract as an executed one on its part, and sought to recover the purchase-price of the goods, was subject to a plea in abatement of the action, and the trial judge committed no error in dismissing the same under the facts admitted to be true, and the plea filed by the defendant.

*Judgment affirmed.　All the Justices concurring, except Lewis, J., absent.*