## SKEELE COAL CO. v. ARNOLD.

(Circuit Court of Appeals, Second Circuit. November 11, 1912.)

### No. 75.

1. SALES (§ 384*)—CONTRACT TO PURCHASE—BREACH—ACTION FOR DAMAGES—ACCRUAL.

Defendant agreed to purchase from the M. Coal Co. a quantity of coal in equal monthly installments between April 1, 1909, and April 1, 1910, at 65 cents a ton f. o. b. mines. Early in April, 1909, defendant repudiated the contract, and in May following the coal company ceased to ask for shipping directions and to mine or tender the coal. *Held*, that the coal company could have then sued and recovered its entire damages.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1098–1107; Dec. Dig. § 384.*]

2. SALES (§ 384*)—CONTRACT TO PURCHASE—BREACH—MEASURE OF DAMAGES.

Where a buyer of coal to be delivered between April 1, 1909, and April 1, 1910, repudiated the contract, the seller should have disposed of its coal to others at the market price, if that exceeded the cost of production; the measure of damages for the breach being the difference between the contract price and the market price for coal to be delivered in the future, under a contract as similar to the repudiated contract as it could obtain.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1098–1107; Dec. Dig. § 384.*]

3. SALES (§ 384*)—CONTRACT TO PURCHASE—BREACH—MEASURE OF DAMAGES.

Defendant agreed to purchase 100,000 tons of coal from the M. Coal Co. between April 1, 1909, and April 1, 1910, at 65 cents a ton at the mine, in equal monthly installments; the coal company being required to pay a brokerage commission of 5 per cent. Defendant early in April, 1909, repudiated the contract, after which the coal company mined 1,500 tons in April, 1909, and then closed the mines to October following, when it again began to mine and sell coal. During the first six

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

months the M. Co. did not mine the coal required, but during the second six months it did mine and sell to others about 33,000 tons. There was evidence that during the first period the market price was less than the cost of production. *Held* that, under such circumstances, the coal company was not bound to mine, the measure of damages being the difference between the contract price and the cost of production, with brokerage added; but, having sold all the coal it produced during the second six months at more than the contract price, it was not entitled to recover anything for the coal which defendant failed to take during that period.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1098–1107; Dec. Dig. § 384.*]

4. APPEAL AND ERROR (§ 248*)—RULINGS—NECESSITY OF EXCEPTIONS.

A ruling to which no exception was taken cannot be reviewed on a writ of error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1432, 1435–1468; Dec. Dig. § 248.*]

In Error to the Circuit Court of the United States for the Southern District of New York; E. Henry Lacombe, Judge.

Action by Gohen C. Arnold, as trustee of the Meriden Coal Company, against the Skeele Coal Company. Judgment for plaintiff, and defendant brings error. Affirmed.

James C. Foley and Nicholas W. Hacker, both of New York City, for plaintiff in error.

C. Andrade, Jr., of New York City, for defendant in error.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. In March, 1909, the Skeele Company agreed to take 100,000 tons of coal from the Meriden Coal Company, in equal monthly proportions between April 1, 1909, and April 1, 1910, at 65 cents a ton f. o. b. mines. Early in April, 1909, the Skeele Company repudiated the contract. The Meriden Company, after some negotiations, must be taken to have acquiesced in this repudiation in May, 1909, because after that it ceased to ask the Skeele Company for shipping directions and ceased to mine or to tender coal.

The Meriden Company mined some 1,500 tons of coal in April, and then closed the mines down to October 1, 1909, when it began again to mine and sell. The year is therefore divided into two periods, of six months each, during the first of which the Skeele Company should have taken 50,000 tons which it did not take, and during which the Meriden Company ceased to mine, and during the second of which the Skeele Company should have taken 50,000 tons, which it did not take, and the Meriden Company did mine and sell to others about 33,000 tons.

[1, 2] The question to be determined is the proper measure of the Meriden Company's damages. As the purpose of the law is compensation, the Meriden Company should be put as far as possible in the same position it would have been in if the contract had been carried out. It could have brought suit to recover its entire damages in May, 1909, when it acquiesced in the Skeele Company's repudiation of the contract. Dingley v. Oler, 117 U. S. 490, 6 Sup. Ct. 850, 29 L. Ed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

984. It ought then to have disposed of its coal to other parties, it being a staple article, at the market price, if that exceeded the cost of production. The measure of damages would then have been the difference between the contract price and the market price for coal to be delivered in the future under a contract as similar to the repudiated contract as it could obtain. However, it elected, as it had a right to do, to bring suit after the term of the contract had expired. At that time it was possible to show the market price of coal for each month of the term of the contract.

[3] There was a conflict of testimony as to the market price of coal between April 1 and October 1, 1909. Witnesses for the Skeele Company testified that it was higher than the contract price, while witnesses for the Meriden Company testified that it was less than the cost of production. There was no obligation upon the Meriden Company to mine in the latter case. The verdict of the jury shows that they believed the Meriden Company's account. Therefore the measure of damages for the Skeele Company's failure to take 50,000 tons between April 1 and October 1, 1909, was the difference between the contract price and the cost of production. The cost of production would have been, including the royalty, 50 cents a ton. If the brokerage commission of 5 per cent., which the Meriden Company owes to the broker who negotiated the contract, be added as a part of the cost of production, then the difference is 10 cents a ton, or $5,000. As, however, the Meriden Company did not save this commission, being still liable for it to the broker, it should be added, and the proper measure would be $7,500. If the commission be not treated as a part of the cost of production, then the difference between the cost of production and the contract price would be 15 cents a ton, resulting in the same sum of $7,500.

[4] For the period October 1, 1909, to April 1, 1910, the plaintiff did mine and sell its coal at more than the contract price, but not to the amount of 50,000 tons. As it says that the capacity of the mine was 100,000 tons a year, which was the amount it agreed to deliver, there is nothing to show that it could not have produced 50,000 tons in that period. Therefore it lost nothing. The verdict being for $10,000, it seems quite clear that the jury must have allowed the plaintiff the commission of 5 cents a ton on the whole 100,000 tons. That question was raised by counsel after the charge, and the judge ruled that the whole commission of $5,000 should be allowed, without any exception being taken by the defendant.

The judgment is affirmed.