8256, 8257. PHOSPHATE MINING Co. *v.* ATLANTA OIL & FER-TILIZER Co.; and *vice versa.*

GEORGE, J. 1. The courts of this State are committed to the rule laid down in Hochster *v.* De la Tour, 2 El. & Bl. 678, and followed by the Supreme Court of the United States in Rhoem *v.* Horst, 178 U. S. 1 (20 Sup. Ct. 780, 44 L. ed. 953). The rule is: An absolute refusal by one party to perform an executory contract containing mutual obligations, prior to the date or dates fixed for performance, if such repudiation goes to the whole contract, amounts to a tender of a breach of the contract; and if accepted as such by the opposite party to the contract, it constitutes an anticipatory breach, and the injured party may at his election at once sue and recover his entire damages. The opposite party is not required to accept a tender of a breach of the contract, but he may elect to keep the contract in force for the purpose for which it was made; and in such case his own obligation, as well as that of the other party, will continue until the time for performance, as fixed by the contract. *Smith* v. *Georgia Loan Co.,* 113 *Ga.* 975 (39 S. E. 410); *Anderson* v. *Kirby,* 125 *Ga.* 62, 67 (54 S. E. 197, 114 Am. St. R. 185, 5 Ann. Cas. 103); *Ford* v. *Lawson,* 133 *Ga.* 237 (5) (65 S. E. 444); *Byrd Printing Co.* v. *Whitaker Paper Co.,* 135 *Ga.* 865 (70 S. E. 798, 22 Ann. Cas. 182); *Southern Flour Co.* **v.** *St. Louis Grain Co.,* 11 *Ga. App.* 401 (75 S. E. 439).

**2.** Where such tender of an anticipatory breach of the contract has been accepted by the opposite party and suit at once commenced, the injured party may recover the entire value of his contract, as if the breach continued to the date fixed for performance; and generally his measure of damages, as under a contract of sale and purchase, is the difference between the contract price and the market price of the subject-matter of the contract on the date fixed for the performance thereof. 3 Elliott on Contracts, § 2027; 6 R. C. L. 1023, 1024, et seq. "The doctrine of anticipatory breach is not a doctrine which fictitiously moves the performance ahead to the time of the repudiation, and regards the repudiation as a failure to perform the contract." 2 Sedgwick on Damages, § 636 (d).

**3.** An apparent exception (but in reality an accurate application of the general rule, according to some text-writers and the doctrine of a few cases) exists where the article which the vendor agrees to sell and the vendee agrees to buy has a market value, and is generally and usually sold for future or forward delivery; in which case the measure of damages is said to be the difference between the price fixed in the contract and the market price of such article for future or forward delivery, according to the contract breached; and this difference is to be determined at the time the tender of the breach is accepted. Compare 2 Sedgwick on Damages, §§ 636 (d), 636 (e), 636 (f); Skeele Coal Co. *v.* Arnold, 200 Fed. 393 (118 C. C. A. 545); Jebeles & Colias Confectionary Co. *v.* Stephenson, 6 Ala. App. 103 (60 So. 437); Louisville Packing Co. *v.* Crain, 141 Ky. 379 (132 S. W. 575).

**4.** This apparent exception to the general rule, applied in the narrow class of cases indicated in the third division of this decision, has much reason in it; but, as we interpret the decisions of the courts of this State, the apparent exception is not recognized. Though the plaintiff sues at once for an anticipatory breach of contract, and trial of the action is had before the expiration of the contract, the measure of his damages is the difference between the contract price of the subject-matter of the contract and the market price at the time and place of performance, and not at the time of the breach. Testimony as to the market value of the subject-matter of the contract should not be confined to the time of the breach. And this is true although the subject-matter of the contract is an article usually and generally, but not exclusively, sold for future or forward delivery. *Roberts* v. *Rigden,* 81 *Ga.* 440 (7 S. E. 742) (contract for services); *Roberts* v. *Crowley,* 81 *Ga.* 429 (3) (7 S. E. 740) (contract for services); *Citizens Bank* v. *Southern Securities Co.,* 143 *Ga.* 101 (3) (84 S. E. 465) (contract for services); *Carolina Portland Cement Co.* v. *Columbia Improvement Co.,* 3 *Ga. App.* 483 (1, 2) (60 S. E. 279); *Realty Co.* v. *Ellis,* 4 *Ga. App.* 402 (3) (61 S. E. 832) (contract for services); *Ga., Fla. & Ala. Ry. Co.* v. *Parsons,* 12 *Ga. App.* 180 (2) (contract for services) (76 S. E. 1063).

**5.** Where the subject-matter of the contract has no current value, the measure of damages is generally the difference between the contract price and the cost of production at the time for performance; whether the trial of the action is before or after the time fixed for delivery, but

the cost of production is material only where the article has no market or current value, and evidence concerning the cost of production is entirely irrelevant where, as in this case, the phosphate rock (the subject-matter of the contract) is sold generally throughout the United States, continental Europe, and Japan.

6. An executory contract may be broken, but it can not be rescinded, by the act of one of the parties. The consent of both parties is essential to a rescission of the contract. *Oklahoma Vinegar Co.* v. *Carter*, 116 *Ga.* 140 (42 S. E. 373, 59 L. R. A. 122, 94 Am. St. R. 112).

7. While one who repudiates an executory contract before the time of performance has arrived can not call upon the opposite party to make forward contracts for his benefit, for the purpose of lessening the damages of the party at fault, nevertheless, if the opposite party accept the tender of the breach, he is bound to abate his damages by reason of circumstances of which he ought reasonably to have availed himself. Rhoem *v.* Horst, supra; Civil Code (1910), § 4398. The tender of an anticipatory breach does not change the time at which the damages are to be estimated, nor affect the general rule of damages; but if the tender is accepted by the opposite party, that party acts thereafter under the rule of avoidable consequences.

8. While the fact that the buyer of fertilizer material had sold its factory and discontinued its business, which fact was communicated to the seller, raised no legal obligation on the part of the seller to consent to a rescission of the contract, or to accept the buyer's transfer of the contract to its successor, yet, under the circumstances appearing in the present record, and in view of the special provisions of the contract, it was for the jury to decide whether the seller had in fact consented to the transfer of the contract.

9. The amendments to the answer of the defendant were properly allowed. over the objections urged. We can not assume that the evidence in support of the defendant's amendment, alleging that the contract was void as in violation of the act of Congress known as the Sherman anti-trust law, will necessarily be the same upon another trial of the case, but, under the facts in the present record, the court did not err in taking that issue from the jury.

10. The demurrers to the petition as amended were properly overruled. Compare *Atlanta Oil & Fertilizer Co.* v. *Phosphate Mining Co.*, 144 *Ga.* 75 (86 S. E. 216).

11. The petition in the instant case contained two counts. On the first count, predicated on the theory that under the terms of the contract between the parties the defendant company failed and refused to receive and pay for a certain quantity of phosphate rock, which under the contract it had obligated itself to take, the plaintiff recovered a substantial verdict. On the second count, which was predicated upon an alleged anticipatory breach of the entire contract to the end of its term, the plaintiff recovered nominal damages only. None of the questions discussed in the foregoing divisions of this decision arose on the trial of the first count, and neither party is complaining in reference thereto. This court will, in its discretion, affirm the judgment of the court below

refusing a new trial on the first count of the plaintiff's petition, and, on account of errors in rejecting evidence and in giving to the jury instructions not in accordance with the rulings announced in this decision, order a new trial only as to the issues involved in the second count. The errors complained of in the cross-bill of exceptions will not require a reversal of the judgment, but since the issues involved in the second count of the plaintiff's petition are to be again submitted to a jury, instructions appropriate to the facts appearing in the record, and not inconsistent with the rulings made in the 7th and 8th divisions of this decision, should be given to the jury.

*Judgment affirmed in part and reversed in part on the main bill of exceptions, and affirmed on the cross-bill. Wade, C. J., and Luke, J., concur.*

DECIDED JULY 26, 1917. ADHERED TO ON REHEARING, SEPTEMBER 24, 1917.

Action on contract; from Fulton superior court—Judge Pendleton. March 18, 1916.

*Evins & Moore,* for Phosphate Mining Company.

*D. W. Blair, King & Spalding,* contra.