9865.     ATLANTA OIL & FERTILIZER COMPANY *v.* PHOSPHATE MINING COMPANY.

1. It was held, when this case was formerly before this court (*Phosphate Mining Co.* v. *Atlanta Oil & Fertilizer Co.,* 20 *Ga. App.* 660, 93 S. E. 532), that certain issues of fact were presented by the record then under consideration which should be submitted to a jury for determination at a subsequent trial under the second count of the petition. The entire former record having been introduced in evidence at the trial now under review, the same issues of fact necessarily remained for the jury, although there was additional evidence. The trial judge therefore erred in directing a verdict.

2. The former decision of this court is the law of this case, and necessarily controlled the subsequent trial so far as the decision was applicable to the issues then presented by the pleadings and the evidence. In that decision it was expressly held that none of the questions there decided arose on the trial of the first count of the plaintiff's petition; and the affirmance of the judgment overruling the motion for a new trial on this count therefore did not operate to determine or foreclose the issues presented by the second count, which were thus expressly excepted.

DECIDED JANUARY 29, 1919.

Action on contract; from Fulton superior court—Judge Pendleton. April 9, 1918.

*D. W. Blair, King & Spalding,* for plaintiff in error.

*Evins & Moore, Jones & Chambers,* contra.

WADE, C. J. The Phosphate Mining Company brought suit against the Atlanta Oil & Fertilizer Company, alleging the breach of a contract in which the plaintiff agreed to sell and the defendant to buy certain phosphate rock to be delivered to the defendant f. o. b. at the mines of the plaintiff in the State of Florida, for an agreed price of $350 per ton, of 2240 pounds, at times and in quantities specified, to wit: 1000 tons during the year 1909,

6000 tons during the year 1910, and 6500 tons during the years 1911, 1912, 1913, 1914, 1915, and 1916. Certain amounts of the rock contracted for were delivered to the defendant in accordance with the terms of the sale agreement, and the first count in the petition alleges that in accordance with the contract the plaintiff was ready to deliver, and did in fact tender, to the Atlanta Oil & Fertilizer Company during each of the months of June, July, August, and September, 1912, its monthly quota of 542 tons of phosphate rock as stipulated by the agreement, but that the defendant refused to receive the same or pay the contract-price therefor. It is further alleged in this count that the contract-price of said rock f. o. b. at the mines of the plaintiff in the State of Florida was $350 per long ton during the months of June, July, August, and September, 1912, and that the market-price of said rock at the time and place of delivery during these months was $2.50 per long ton; wherefore the defendant was indebted to the plaintiff in the sum of $1 per long ton or $2,168 on the 2,168 tons tendered and refused during these months.

The second count of the petition alleges: that on September 25, 1912, the plaintiff received a written notice from the defendant to the effect that the defendant was unable to carry out the terms of the entire contract and declined to give any shipping instructions in regard to the movement of any rock in the future, and that from time to time thereafter the defendant avowed its intention not to conform to the terms of said contract, and therefore breached the same in toto; that the Atlanta Oil & Fertilizer Company renounced the contract in toto and breached the complete contract to the end of its term, by reason of which breach the plaintiff was damaged in the sum of $27,626, as the difference between the cost of manufacturing and the contract-price as set out in the contract would net to the plaintiff a profit of that amount if the plaintiff were allowed to fulfill and carry out the terms of said contract to its expiration. By amendment the month of April was substituted for June in the first count, and the amount claimed in the second count was changed to $41,439.

The case was tried on both counts at the January term of the superior court, 1916, and the trial resulted in a verdict in favor of the plaintiff on the first count for $1,734.40, and on the second count for $1 only. The case came to this court on exceptions to

the refusal of the plaintiff's motion for a new trial and on July 26, 1917, this court rendered· a judgment affirming the judgment of the lower court in part and reversing it in part on the main bill of exceptions, and affirming the judgment on the cross-bill· of exceptions filed by the. Atlanta Oil & Fertilizer Company.  The original judgment of this court simply reversed the judgment of the court below on the main-bill of exceptions, but this judgment was; on motion of counsel for the plaintiff and by consent of counsel for the defendant, amended, as will appear from the judgments themselves, taken from the minutes of this court, to wit:  "Phosphate Mining Co. *v.* Atlanta Oil & Fertilizer Co.  This case came before this court upon a writ of error from the superior court of Fulton county; and, after argument had, it is considered and adjudged that the judgment of the court below be reversed because the court erred in overruling the motion for a new trial.  Wade, George and·Luke, JJ., concur."  The amended judgment was as follows:  "Phosphate Mining Company *v.* Atlanta Oil & Fertilizer Company, and vice versa.  Upon consideration of these cases after rehearing it is ordered that the judgments rendered therein on July 26, 1917, be hereby adhered to except that the judgment on the main bill of exceptions is by consent of counsel affirmed in so far as the recovery had upon the first count of the declaration is concerned.  It is further ordered that the entry of judgment on the main bill be hereby vacated, and that in lieu thereof the following be now entered:  'July 26, 1917.  The following judgment was rendered:  Phosphate Mining Company *v.* Atlanta Oil & Fertilizer Company.  This case came before this court upon a writ of error from the superior court of Fulton county; and, after argument had; it is considered and adjudged that the judgment of the court below be affirmed as to the recovery had upon the first count of the plaintiff's petition; and that it be reversed as to the second count because the court erred in refusing a new trial.  Wade, George, and Luke, JJ., concur.' "  The application on which the original judgment was amended was as follows:  "Now comes the Phosphate Mining Company, plaintiff in error on the main bill of exceptions in the above case, and moves that the judgment of the court rendered herein on the 26th of July, 1917, be amended by the court directing that the judgment of the superior court of Fulton county on the first count of the plaintiff's petition in the court

below be affirmed. This 15th day of August, 1917. (Signed) Evins & Moore, attorneys for movant. We consent to the foregoing. (Signed) King & Spalding, attorneys for Atlanta Oil & Fertilizer Co." This application was duly filed in office on August 17, 1917, and was made a part of the record in the case.

The case was accordingly sent back for a new trial on the second count of the petition, and was again tried on April 8, 1918, during the March term of Fulton superior court. At that trial the entire record of the case, including the brief of the evidence adduced at the former trial, was introduced, besides other testimony tending to show the market value of phosphate rock at the various times when under the contract between the parties the defendant had bound itself to receive and pay for certain specified amounts—this last testimony being positive and undisputed, as the term covered by the contract had expired before this trial, and the testimony as to market value on the various dates was no longer opinion evidence merely. At the conclusion of the entire evidence the court on motion directed a verdict in behalf of the plaintiff, for $39,080.39, over the objection of the defendant, the defendant insisting that the court had no right to withdraw the case from the jury, but that the issues of fact therein should be submitted to the jury for determination, and that the court had not the right to assess the damages, and that the amount claimed as damages was not correct. The defendant excepted to the direction of the verdict, upon the ground that under the facts of the case and the decision of the Court of Appeals therein (20 *Ga. App.* 660), the case should have been submitted to the jury upon the several issues raised by the pleadings, as, under the evidence in the case, issues were presented for determination by the jury; and that the court erred also in fixing the amount of damages and in withdrawing that issue from the jury, and in holding that the testimony demanded a finding for $39,080.39, and in directing a verdict therefor. There were other assignments of error which need not be referred to or considered.

When this case was formerly passed upon by this court (20 *Ga. App.* 660, 93 S. E. 532), the opinion delivered in behalf of the court by George, J., made the following explicit and distinct ruling: "While one who repudiates an executory contract before the time of performance has arrived cannot call upon the opposite

party to make forward contracts for his benefit, for the purpose
of lessening the damages of the party at fault, nevertheless, if the
opposite party accepts the tender of the breach, he is bound to
abate his damages by reason of circumstances of which he ought
reasonably to have availed himself.    Rhoem v. Horst, [178 U. S.
1, 20 Sup. Ct. 780, 44 L. ed. 953]; Civil Code (1910), § 4398.
The tender of an anticipatory breach does not change the time
at which the damages are to be estimated, nor affect the general rule
of damages; but if the tender is accepted by the opposite party,
that party acts thereafter under the rule of avoidable consequences.
.  .  While the fact that the buyer of fertilizer material had sold
its factory and discontinued its business, which fact was communi-
cated to the seller, raised no legal obligation on the part of the
seller to consent to a rescission of the contract, or to accept the
buyer's transfer of the contract to its successor, yet, under the
circumstances appearing in the present record, and in view of the
special provisions of the contract, it was for the jury to decide
whether the seller had in fact consented to the transfer of the
contract." It will be observed therefrom that this court indicated
that one of the issues of fact for determination in the case was
whether or not, if in fact the Phosphate Mining Company accepted
the tender of the breach of the contract by the Atlanta Oil &
Fertilizer Company, the first-named company had properly com-
plied with its obligation to abate the damages by reason of circum-
stances of which it ought reasonably to have availed itself.    In
other words and in simple plain English, did the phosphate com-
pany, after acceptance of the tender of the anticipatory breach of
the contract, make the proper legal effort to lessen or mitigate the
damages which might be expected to flow to it from the breach
of the contract?    The decision held that under the circumstances
appearing in the record then before the court, "and in view of the
special provisions of the contract," an issue of fact was created
for decision by the jury, as to whether or not the seller had in
fact consented to the transfer of the contract from the Atlanta
Oil & Fertilizer Company to another corporation.    It is clear, from
a reference to the record of the former trial, that the court, in
referring to "circumstances appearing in the present record,"
meant such circumstances as might tend to support a finding that
the phosphate company had impliedly or otherwise consented to

the transfer of the contract. In the 11th division of the former decision this court again made clear its ruling that certain issues were involved in the second count of the plaintiff's petition which should be submitted at the next trial to a jury, the following language being used: "The errors complained of in the cross-bill of exceptions will not require a reversal of the judgment, but since the issues involved in the second count of the plaintiff's petition are to be again submitted to a jury, instructions appropriate to the facts appearing in the record, and not inconsistent with the rulings made in the 7th and 8th divisions of this decision, should be given to the jury." Obviously then, under the distinct ruling of this court now under discussion, which became the law of this case, equally binding upon this court and the trial court wherever applicable, the trial judge was required to submit to the jury for determination certain questions of fact, and consequently it was error on his part to disregard these instructions and direct a verdict.

It is insisted by the defendant in error that the court did not err in directing a verdict, since the last trial occurred after the expiration of the contract, and the undisputed evidence as to the market value of the commodity on the dates specified by the contract was no longer opinion evidence merely, but was definite and positive testimony as to actual facts, from which the court could make an exact computation; and that there was no error in directing a verdict, for the further reason that notwithstanding the ruling in the 7th, 8th, and 11th divisions of the former decision of this court in this case, to the effect that certain issues of fact should be submitted to the jury for determination at another trial of the second count of the petition, these issues were res adjudicata, because they must necessarily have been considered and passed upon by the jury in arriving at a verdict in favor of the plaintiff on the first count of the petition, and the judgment overruling the motion for a new trial on the first count had been affirmed by this court. The entire record of the former trial was introduced in evidence at the trial now under review, in order to establish the fact that all the issues, except merely the value of the commodity at the various times named in the contract, had been adjudicated by the verdict on the first count and the opinion of this court and the affirmance of the judgment sustaining that verdict. It is unnec-

essary to examine the record of the previous trial in connection with the verdict returned on the first count of the petition and in connection with the judgment of this court sustaining the verdict on that count, in order now to determine whether at the last trial the judge could correctly hold as an original proposition, from an inspection of the entire previous record, that the issues raised under the second count had been necessarily involved also in the determination by the jury of the respective rights of the parties under the first count. This court has expressly determined judicially that "none of the questions discussed in the foregoing divisions of this decision [which include the questions referred to in the 7th, 8th and 11th divisions of the decision] arose on the trial of the first count." In other words, whether right or wrong, and whether an inspection of the record might or might not support the view that the identical issues referred to in the 7th, 8th and 11th divisions of the former decision were in fact involved in the trial of the first count of the plaintiff's petition, it has been definitely decided, and that decision is irrevocably fixed, that these issues did not arise on the trial of the first count.

Much might be said to support the view that in fact the questions which it is insisted were determined by the judgment affirming the verdict on the first count were not actually involved therein, considering the alleged date when the breach of the contract was tendered and all the facts, circumstances, implications, and deductions which might be determined from the entire record; but satis superque est—to repeat what has already been said—that the former judgment of this court is the law of the case, and this court has postively and definitely held that under the pleadings and the evidence at the former trial, the issues which the court then held should be submitted to a jury at another trial on the second count of the petition did not arise or were not involved in the trial of the first count. The entire 11th division of the former decision is as follows. "The petition in the instant case contained two counts. On the first count, predicated on the theory that under the terms of the contract between the parties the defendant company failed and refused to receive and pay for a certain quantity of phosphate rock, which under the contract it had obligated itself to take, the plaintiff recovered a substantial verdict. On the second count, which was predicated upon an alleged anticipatory

breach of the entire contract to the end of its term, the plaintiff recovered nominal damages only. None of the questions discussed in the foregoing divisions of this decision arose on the trial of the first count, and neither party is complaining in reference thereto. This court will, in its discretion, affirm the judgment of the court below refusing a new trial on the first count of the plaintiff's petition, and, on account of errors in rejecting evidence and in giving to the jury instructions not in accordance with the rulings announced in this decision, order a new trial only as to the issues involved in the second count. The errors complained of in the cross-bill of exceptions will not require a reversal of the judgment, but since the issues involved in the second count of the plaintiff's petition are to be again submitted to a jury, instructions appropriate to the facts appearing in the record, and not inconsistent with the rulings made in the 7th and 8th divisions of this decision, should be given to the jury."

Construing the entire opinion and the various paragraphs thereof in connection with each other, it is clearly evident that this court, in affirming the judgment refusing a new trial on the first count of the plaintiff's petition, based this affirmance on the consent of counsel for both parties, which appears in the foregoing statement of facts, and it is recited in this opinion that "neither party is complaining" of the verdict on the first count which was affirmed. Under the agreement of counsel, the language actually employed by this court in its former decision, and all the facts and circumstances of the case, it is obvious that the affirmance of the judgment overruling the motion for a new trial on the first count of the plaintiff's petition was without prejudice to the rights of either party touching the issues raised by the second count. The issues referred to in the 7th and 8th divisions of the former decision of this court have not, therefore, been adjudicated, so far as the second count of the petition is concerned, and under the former ruling of this court they should have been submitted to the jury for consideration, for while there was additional evidence offered at the last trial, the entire record of the first trial was in evidence, as has already been said; and since it has been determined by this court that the evidence adduced at the former trial raised certain issues for determination by the jury, it necessarily follows that these issues were again presented for solution by the jury when that identical

evidence was presented, notwithstanding it was supplemented by other and further testimony.

We hold, therefore, that the trial judge erred in directing a verdict contrary to the direction given by this court in its former opinion. It is unnecessary to consider the remaining exceptions.

*Judgment reversed. Jenkins and Luke, JJ., concur.*