10831, 10832. ATLANTA OIL & FERTILIZER CO. *v.*
PHOSPHATE MINING CO.; and *vice versa.*

BLOODWORTH, J. 1. The motion to award damages against the plaintiff in error is refused.

2. In prior decisions relating to the contract involved in this case (144 *Ga.* 75; 20 *Ga. App.* 660; 23 *Ga. App.* 338) practically all the law of the case is settled, and under them two questions were for submission to the jury in the last trial,— one the "rule of avoidable consequences," the other "whether the seller had in fact consented to the transfer of the contract." Both questions were clearly and correctly submitted to the jury, and when all the facts and the entire charge as given are considered, no reversible error is found either in the excerpts from the charge or in the refusal to give certain requested charges.

3. The special grounds of the motion for a new trial not covered above are also without merit; the verdict is supported by the evidence, and the judge did not err in overruling the motion for a new trial.

*Judgment affirmed on the main bill of exceptions; cross-bill dismissed. Broyles, C. J., and Luke, J., concur.*

DECIDED JULY 14, 1920. REHEARING DENIED JULY 28, 1920.

Action on contract; from Fulton superior court — Judge Pendleton.   July 1, 1919.

By a written contract made in 1906 between the Phosphate Mining Company and the Atlanta Oil & Fertilizer Company, the Phosphate Company agreed to sell and the Oil Company to buy certain phosphate rock to be delivered at the mines of the Phosphate Company in Florida at a stated price and in specified amounts through a series of years ending in 1916.  On October 15, 1912, the Phosphate Company brought an action against the Oil Company for an alleged breach of the contract.  In the second count of the petition (the only count remaining in the case at the last trial) it was alleged that on September 25, 1912, the plaintiff received written notice from the defendant to the effect that the defendant was unable to carry out the entire contract and declined to give any shipping instructions in regard to the movement of phosphate rock in the future, and that from time to time thereafter the defendant declared that it would not conform to the terms of the contract, and therefore the defendant breached the contract in toto to the end of its term.  By amendment of this count, on the last trial, the plaintiff sought to recover as damages a sum representing the difference in the contract price and the market price of the phosphate rock at the time and place of delivery agreed upon, besides interest, and prayed judgment for $38,999.30 as "principal damage," and for $17,744.57 as interest. The trial resulted in a verdict in favor of the plaintiff for the principal sum stated.

In the defendant's amended answer it is alleged that on or about July 1, 1912, the defendant made an agreement with the Empire Cotton Oil Company, the purchaser of its manufacturing plant, by which that company took over the contract in question and became the assignee of the contract and agreed to receive and pay for the rock contracted for therein; that on or about July 2, 1912, the plaintiff was notified of this by telegram and letter; that the plaintiff, by letters on July 3 and July 5, 1912, consented to the transfer, and that it further recognized and acted upon its acceptance of the Empire Cotton Oil Company as transferee of the contract, by withholding the July, 1912, shipments under the contract, at the sole instance and request of the Empire Cotton Oil Company; that while the plaintiff and the Empire Cotton Oil Com-

pany subsequently undertook to recede from the position taken by them in regard to the transfer of the contract and the plaintiff's assent to it, the plaintiff was not released, and the Empire Cotton Oil Company was bound to receive the phosphate rock and pay for it according to the terms of the contract; that "any release of the Empire Cotton Oil Company, either expressly or by the conduct of the plaintiff, was the sole cause of any loss to the plaintiff that it may have sustained under said contract, and this defendant is not liable therefor, and it was the duty of the plaintiff to hold the said Empire Cotton Oil Company to said contract, and to save both itself and this defendant from any loss by reason of any nonperformance thereof; and so it says it is not liable to the plaintiff in any sum whatever."

In the motion for a new trial it is contended that the effect of the decision in this case in 20 *Ga. App.* 662 (8), was to hold, as charged by the court below on the trial then under review, that if the plaintiff consented to the transfer of the contract to the Empire Cotton Oil Company, the defendant would be released from further liability; and that on the last trial the court erred in refusing to charge the jury to this effect, and in charging in effect that in order to release the defendant it must be shown not only that the plaintiff consented to the transfer of the contract by the defendant to its successor, but that the parties agreed, either by express language or impliedly, that the defendant should be released from further liability. It was contended also that the court erred in using the term "novation," and in not explaining to the jury the meaning of this technical term. These contentions cover substantially the exceptions in several grounds of the motion for a new trial as to parts of the following instructions to the jury: "The burden is on the defendant to establish the defense that there has been a novation in this case, and that therefore they are not liable. . . The defendant files a defense which it says prevents the plaintiff from recovering anything. It says that there has been a novation of the contract, and that it was released by novation, . . that it had a contract with the plaintiff with reference to the rock, and that it transferred that contract to the Empire Cotton Oil Company, and I charge you that the transfer of that contract to the Empire Cotton Oil Company would avail, provided certain other things happened." "If

the transfer was made by the defendant company to the Empire Company, and if the plaintiff, the Phosphate Mining Company accepted the transfer, knew about the transfer and accepted it, and defendant was relieved from further liability, if the Empire Company was substituted for the defendant company, then that would be a novation, and the plaintiff would not have a right to recover, but it would be necessary for you to determine with reference to these things. You look to the testimony in the case and see whether or not there was an acceptance — a notice of acceptance — on the part of the Phosphate Company of this transfer by the Oil Company to the Empire Company. Did they know about it, and did they accept that transfer? And if they accepted that transfer and the Oil Company was released, the Oil Company would not be further liable in the case. . . The Oil Company would be released either by express contract or by implication, and you look to the testimony in this case and see whether or not it had been so released. An express contract would be an express understanding between the parties. An implied contract would be a contract that would be inferred from the facts and circumstances of the case. You look to all of the facts and circumstances in the case about these transfers and what was said about them, and all that passed between all the parties, and if it was understool between all three of the parties, understood and agreed by them, all three of them, that the Oil Company was released, why that would be a novation, and the plaintiff cannot recover, but, if otherwise entitled to recover, the plaintiff can recover from the Oil Company."

In regard to the plaintiff's duty to lessen the damage to it so far as avoidable, it was contended that the plaintiff, having accepted the defendant's transfer of the contract to the Empire Cotton Oil Company, should have held the Empire Cotton Oil Company to the contract; and the defendant requested the court to charge the jury that if the plaintiff assented to the transfer of the contract and afterwards released the Empire Cotton Oil Company from its obligations under the transfer, " the plaintiff could not recover from the defendant such losses as would have been saved had the Empire Cotton Oil Company not been released from its obligations under the transfer; " and requested the court

to charge also as follows: " I charge you as a matter of law that when the defendant transferred the contract to the Empire Cotton Oil Company it breached the contract, but that if the plaintiff accepted that breach, then the duty to minimize the damage arose, and the plaintiff was bound to avail itself of any circumstances which then existed which it ought reasonably to have availed itself of in order to minimize the damage." The refusal to charge as requested is complained of in the motion for a new trial. On this subject the court charged as follows: " It is also contended by the defendant that it was the duty of the plaintiff, if there had been a breach of the contract and that breach had been accepted by the plaintiff, and bringing suit would be an acceptance, that the Oil Company breached the contract, and transferring the contract to the Empire Cotton Oil Company would amount to a breach, and, if they breached the contract and the plaintiff accepted that breach expressly or by filing suit, then it was the duty of the plaintiff to avoid any damage that it could reasonably avoid under our law; and I will read you the section of the code which expressly provides for that: 'Where by a breach of contract . . one is injured, he is bound to lessen the damages as far as is practicable by the use of ordinary care and diligence.' [Civil Code of 1910, § 4398.] And ' ordinary care' means that care that every prudent person would exercise under the same or similar circumstances." It is alleged that the court erred in so charging, because " the jury might well conclude from the charge that the duty to minimize the damage did not result until the acceptance of the breach by bringing suit, when the court should have charged the jury that the acceptance of the transfer was the acceptance of the breach, and that then and at that time the duty to minimize the damage existed, and that if any loss resulted to the plaintiff by reason of the plaintiff's failure to avoid any loss which it could reasonably avoid, then and in that event the plaintiff could not recover such loss or damage from the defendant."

The court charged: If there was a breach of the contract, " that is, if the defendant refused to accept the rock which it ought to have accepted under the contract, and it is otherwise liable under the instructions which I .will give you, the plaintiff would have the right to recover; and if it has the right to recover, the amount

of the recovery would be the difference between the market value and the contract price for this rock." It 'is alleged that the court erred in so charging, because (1) this charge ignores the defense that the plaintiff's consent to the transfer of the contract justified the defendant in refusing to take and pay for phosphate rock after the date of the transfer and its acceptance by the plaintiff; and (2) it ignores the duty to minimize damages from the date of acceptance of the transfer. It is contended that the court should have charged the jury that the plaintiff could not recover in any event more than the difference between the contract price and the cost of production.

The court charged: " You determine what the amount of tons is that ought to have been delivered under the contract; and if the plaintiff is entitled to recover, you determine what is the difference between the contract price and the market value; . . and if the plaintiff is entitled to recover, he will be entitled to recover the difference between the market value and the contract price." This is alleged to be error for the following reasons: The contract is in writing, and its construction was for the court, and not for the jury. The contract provides: "Buyers are at liberty .. . to diminish the quantity called for in any year to the extent of not exceeding 10 per cent., provided that the quantity to be taken shall not be less than buyer's consumption, and provided further that notice of such diminished demand be given seller 12 months in advance of such change." It is undisputed that the seller was notified that the buyer had no demand for consumption and no capacity for consumption after July 1, 1912, and had sold its plant and transferred its contract to the Empire Cotton Oil Company; and the purchaser's refusal to take any rock operated at least to diminish the quantity specified in the contract to the extent of 10 per cent., beginning one year from the date of that notice. The court should have charged that after that date the quantity named in the contract would be thus diminished. And the court should have charged that if the market price went below the cost of production, it would at that point cease to be the measure of recovery, and the measure of recovery would then be the difference between the contract price and the cost of production.

An expression of opinion that the jury should find for the plain-

tiff is alleged to have been made by the court in charging, "You look to all of the facts and circumstances in the case and exercise your discretion as to whether or not, on this sum that you find as I have indicated to you, the plaintiff shall recover interest," and if the plaintiff should recover interest, it should be added to the amount found for the plaintiff and the verdict should be for one amount.

In charging as to credibility of testimony, the court said: "As a general rule, if there is no criticism of the witness in any way, his testimony must be received when it refers to the facts." It is contended that this instruction was misleading and "was calculated to unduly·impress the jury with the testimony of the witness Lang, who testified as to the market value," when there was an admission in the pleadings that the cost of producing the rock was greatly in excess. of the market value to which this witness testified.

*D. W. Blair, King & Spalding, Daniel MacDougald,* for plaintiff in error.

*Robert P. Jones, Evins & Moore,* contra.