14501. HERZFELD *v.* SOUTHERN SAW MILL COMPANY.

The words of the telegram, "Please cancel orders 7x8 ties. See letter," taken in connection with the letter referred to, must be treated as a repudiation of the contract in question, and not merely a request for cancellation.

The petition as amended set forth a cause of action, and should not have been dismissed on general demurrer.

DECIDED DECEMBER 7, 1923.

Complaint; from city court of Thomasville—Judge W. H. Hammond. April 2, 1923.

The petition of Herzfeld alleges: that on October 1, 1920, he received from defendant an offer to purchase 100,000 feet of lumber of a designated class, to be made into cross-ties, which were to be shipped as per instructions to be sent by defendant with formal order confirming purchase; price $45 per thousand f. o. b. cars, shipment 30 to 90 days, B. & O. inspection; that on October 2 plaintiff by letter accepted the offer, and on October 4 defendant rendered the agreement complete and binding by forwarding ship-

ping instructions, by which the timber was to be shipped to Baltimore & Ohio Railroad Company, partly at Newark, Ohio, and partly at Green Springs, West Virginia; that petitioner manufactured the ties and was ready and offering to deliver them when he received from defendant, in due course of mail, under date of November 9, 1920, a written instrument, breaching the contract, as follows: "Thomasville, Ga., November 9, 1920. Herzfeld Lumber Company, Alexander City, Ala. Dear Sirs: We have just wired you as follows, which we now beg to confirm: 'Please cancel orders 7x8 ties. See letter.' We regret very much the necessity of canceling these orders, but the officials of the B. & O. Railroad have taken a very arbitrary stand, and state that the original instructions to their purchasing agent was that these ties were to come from Florida, and be cut from nothing but Florida timber, and they are refusing to accept shipments from any other territory. We were not advised of this fact when booking the order, but so far have been powerless to get them to agree to inspect shipments from any other territory, although we have assured them that Georgia and Alabama timber is just as good as Florida timber, but they seem to think differently. Kindly acknowledge receipt. Yours very truly, The Southern Saw Mill Company, Pardee."

The petition is in two counts. In the first count as amended the plaintiff alleges: "6. Under date of July 10, 1921, defendant received from petitioner a telegram, in words as follows: 'Offered sixty cents for ties held for you. Unless you send shipping instructions by thirteenth, will accept offer and charge you the difference. Wire answer, urgent.' This offer meant 60 cents per tie, or $1484.25 for the 100,000 feet of ties, and was the highest and best offer obtainable at any time between the date of breach of contract and date of resale. 7. After receipt of said telegram defendant continued to refuse to perform its contract, and September 1, 1921, petitioner accepted the offer referred to in behalf of defendant, and credited defendant with $1484.25, the best and highest price to be obtained, leaving defendant due petitioner the sum of $3015.75, being the difference between the contract price and the price obtained at resale." Defendant demurred specially to paragraph 6 as follows:

"To paragraph 6 of the first count, upon the ground that the allegations therein are insufficient under the plaintiff's petition

to constitute legal notice to the defendant of plaintiff's intention to make a resale of the goods, and because the name of the person making said offer is not stated, nor is the name of the person to whom the said goods are alleged to have been resold stated therein, nor is the place of said sale given." By amendment plaintiff thereafter added paragraph 9, amending paragraph 6, and added paragraph 10, as follows: "9. The offer was made by the Birmingham & Southeastern Railroad Co., through its receiver, Mr. Winton Blount, to whom said ties were sold at said price on said date described in paragraph 7 f. o. b. cars mill contemplated in both the contract with defendant and the contract and offer of resale. 10. Notice as required by law was given of plaintiff's intention to make said resale for defendant's account."

By the second count, after alleging a breach by the defendant on account of the letter dated November 9, as already quoted, plaintiff alleges by his petition as amended that: "6. The total price according to contract of said ties was $4500, and the market price at the time and place of delivery was $1484.25. The difference between contract and market price is $3015.75, which said sum of $3015.75 the Southern Saw Mill Company is due and fails to pay petitioner. 7. As a result of the breach of said contract the Southern Saw Mill Company is due and refuses to pay petitioner, besides the principal sum $3015.75, the interest upon same since the date of delivery, according to contract, at the rate of seven per cent. per annum." By amendment paragraph 8 was added to this the second count, as follows: "After defendant refused to take and pay for said goods bought, plaintiff retained them, and the market price f. o. b. cars mill on December 31, 1920, the time and place for delivery, was as alleged in paragraph 6 of this count."

Defendant demurred generally and specially. After the amendments to plaintiff's petition, defendant renewed its original special demurrer to paragraph 6 of the first count as amended by paragraph 9. Defendant also renewed its special demurrer to paragraph 10 of the amendment, upon the ground "that same is a mere conclusion of the pleader, it not being adjudged [alleged?] what the notice was, nor its contents set out, nor does it allege how or whom,—that is to say, to what person or persons, if any, connected with defendant corporation,—such alleged notice was

given, to enable this defendant to defend as to such alleged notice of resale." The first of these renewed demurrers was sustained, the second overruled. The court sustained the general demurrer to the petition as a whole. To these rulings the plaintiff excepted.

*W. I. MacIntyre, J. E. Craigmiles,* for plaintiff.

*Titus & Dekle,* for defendant.

JENKINS, P. J. (After stating the foregoing facts.) It is the contention of counsel for defendant in error that "there never was any refusal by the buyer to take and pay for the goods; that under the contract the buyer had the right to request a cancellation, and this would not amount to a breach; that the seller distinctly avers that the goods were manufactured and ready for delivery under the contract before the buyer requested a cancellation, and at that time the seller had as a part of the contract its positive shipping instructions;" that "under these circumstances he could not fail or refuse to carry out these shipping instructions and resell the goods, nor was he justified in retaining them in violation of his own contract and suing to recover the difference between the market price and the contract price at the time and place of delivery;" that "he should have delivered as he had contracted to do;" and that consequently the petition set forth no cause of action.

In *Phosphate Mining Co.* v. *Atlanta Oil Co., 20 Ga. App.* 660, 662 (6) (93 S. E. 532), the rule is stated that "an executory contract may be broken, but it cannot be rescinded, by the act of one of the parties. The consent of both parties is essential to a rescission of the contract" (citing *Oklahoma Vinegar Co.* v. *Carter,* 116 *Ga.* 140, 42 S. E. 378, 50 L. R. A. 122, 94 Am. St. R. 112). The provision contained in plaintiff's letter of acceptance, that the purchase and sale was "subject to cancellation only when agreed to by both parties," is but a statement of what constituted the legal rule. If the contention of defendant in error be correct, that the petition shows that the defendant did not by its words and conduct breach its obligation, that there was never any refusal on its part to take the goods, but that the pleadings, properly construed, show merely that the defendant requested a cancellation, this would be an end to the matter, since the plaintiff vendor in such a case would not have been relieved of the duty of complying with its own obligation to ship the goods as provided for by the contract,

There is nothing whatever contained in the record which in any way indicates an agreed rescission. Therefore, the question is, did the defendant purchaser breach the contract, or merely propose a cancellation? If what he said may be taken and construed as an announcement that he would not accept the goods contracted for, it amounts to a breach. The telegram must be construed in connection with the letter to which it refers. If the telegram stood by itself, it might reasonably be taken as constituting a mere request for a rescission of the agreement. As here used, "the imperative, followed by the infinitive, generally without *to,* is used as a form of polite request or entreaty." (Standard Dictionary.) But when the telegram is construed in connection with the letter, it seems clear to us that the purchaser in unmistakable terms puts the seller on notice that he will not take or accept the goods. The letter does not ask for, but announces, a cancellation. It expresses regret for "the necessity," not of making a request, but of "cancelling these orders," and states as a reason for its conduct in so doing that the railroad, to which they had been ordered shipped, had positively refused to accept them. This being the only shipping direction with which the plaintiff seller had been furnished, the letter amounted to an absolute refusal to take the goods; and we cannot agree with the contention of defendant in error that the seller, despite such notice, could or should have proceeded to make the shipment as previously indicated. The letter concluded by asking, not acquiescence, but mere acknowledgment of its notice of cancellation.

Each count was good as against general demurrer. The court has ruled that the allegation as to notice, made in paragraph 10 of the first count, was not subject to special demurrer. No exception is taken to this ruling. "Whether a seller, who, upon the purchaser's refusal to take and pay for goods bought, elected to resell and recover the difference between the contract price and that obtained on the resale, exercised reasonable diligence to sell within a reasonable time and at the best price he could obtain is a question for the jury." *Bennett* v. *Mann, 24 Ga. App.* 581 (2) (101 S. E. 706).

*Judgment reversed. Stephens and Bell, JJ., concur.*